## THE STATE OF KANSAS v. H. B. BRYAN.

1. PROMISE OF MARRIAGE; *Illicit Connection; Sufficient Information.* Where an information under § 36, chapter 31, Comp. Laws of 1879, charges that on November 3, 1884, in the county of Smith and state of Kansas, one B., a male person, did then and there unlawfully and feloniously obtain illicit connection with one K., she, the said K., then and there being a female person of good repute, of the age of only seventeen years, and the said B. did then and there obtain such illict connection with the said K. aforesaid, at the time and place aforesaid, under a promise of marriage then and there made by him, the said B., to her, the said K., *held,* that the information sufficiently charges that the prosecutrix was of good repute at the time of the marriage contract, and that the marriage contract was the moving cause or consideration for the illicit connection; and also, *held,* that the omission to state in the information more specifically that the prosecutrix was a single woman, or the defendant a single man, at the time of the promise of marriage, is not necessarily fatal thereto.

2. INCOMPETENT EVIDENCE; *Reputation and Age of Female.* Upon the trial of a defendant for the offense charged in § 36, chapter 31, Comp. Laws of 1879, it is not competent for the defendant to prove particular acts of unchastity, or specific acts of illicit intercourse, by the prosecutrix with other persons. "It is the reputation and the age of the female, and not her previous conduct, that bring her within the protection of the statute." (*Bowers v. State,* 29 Ohio St. 542.)

3. CHASTITY; *Reputation; Competent Witness.* Where the prosecutrix has recently lived in the neighborhood of the witness, which is about five miles from her own home, and is generally acquainted in that neighborhood, and such witness knows the general reputation of the prosecutrix for chastity in such neighborhood, but does not know her general reputation for chastity in the particular neighborhood in which she resides at the time of the trial, such witness may be permitted to give evidence of her general reputation for chastity in his neighborhood. The means and extent of the witness's knowledge, under the circumstances, are matters which affect the credibility, but not necessarily the competency, of the witness.

4. REPUTATION FOR CHASTITY; *Evidence of Good Repute.* A woman's reputation for chastity is what the people of her acquaintance generally say of her in this regard; that is, the general credit for chastity which she bears among her neighbors and acquaintances. If a woman's neighbors and acquaintances say nothing of her, or do not question her character for chastity, then her reputation in this regard should be considered good. The best character is generally that which is least talked about;

therefore, the negative evidence of a witness "that he never heard any-thing against the character of the woman for chastity," in whose behalf he had been called, that is, "that he never heard her conduct criticised, condemned, or even talked about," is admissible upon the trial, where the reputation of the woman for chastity is in question, and is strong evidence of the woman's good repute.

### Appeal from Smith District Court.

ON December 15, 1884, there was filed in the district court of Smith county, the following information, (court, title, verification and indorsements omitted :)

"I, the undersigned, prosecuting attorney of said county, in the name, by the authority and on behalf of the state of Kansas, give information, that on or about the 3d day of November, 1884, in said county of Smith and state of Kansas, one H. B. Bryan, a male person, did then and there unlaw-fully and feloniously obtain illicit connection with one Hattie M. Kinsley, she, the said Hattie M. Kinsley, then and there being a female person of good repute, of the age of only seven-teen years; and the said H. B. Bryan did then and there obtain such illicit connection with the said Hattie M. Kinsley aforesaid, at the time and place aforesaid, under a promise of marriage then and there made by him, the said H. B. Bryan, to her, the said Hattie M. Kinsley, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas.

R. M. PICKLER, *Prosecuting Attorney.*"

Trial had at the December Term, 1884, before the court, with a jury. The court (Smith, J., presiding) instructed the jury as follows:

"In this case it is charged that at the county of Smith and state of Kansas, and on or about the 3d day of November, 1884, the defendant H. B. Bryan, being a male person, did obtain illicit connection, under promise of marriage, with Hat-tie M. Kinsley, a female of good repute and under twenty-one years of age. To justify a conviction in this case, the state must establish by the evidence, beyond a reasonable doubt, the guilt of the defendant, and every fact in the case essential to show his guilt; that is to say, that before you find the defend-ant guilty, you must be satisfied from the evidence beyond a reasonable doubt that in the county of Smith and state of Kan-sas, and at or about the time charged, and within two years

prior to the filing of the information, the defendant, H. B. Bryan, being a male person, did obtain illicit connection with Hattie M. Kinsley; that at that time said Hattie M. Kinsley was under the age of twenty-one years, and was a female of good repute for virtue and chastity; and that the defendant obtained such illicit intercourse with said Hattie M. Kinsley under a promise of marriage. It is essential that such illicit intercourse was obtained by the inducement of the promise of marriage, and that said Hattie M. Kinsley consented to such illicit intercourse by reason of such promise of marriage. There may have been any number of other reasons or inducements existing or offered by the defendant, which contributed to impel said female to assent to such intercourse. To justify a conviction in this case, you must believe beyond a reasonable doubt that the defendant obtained illicit intercourse with Hattie M. Kinsley under and by reason of this promise to marry said Hattie M. Kinsley, without which promise such intercourse would not have been obtained. The burden of proving the guilt of the defendant rests upon the state, and at no stage of the proceedings does the burden shift upon the defendant to prove his innocence. You are the exclusive judges of the facts in this case, and of the weight of the evidence, and of the credibility of the witnesses; and in determining the weight to be given to the evidence of any witness, you may take into consideration the interest of any in the result of your verdict, his means of knowing and his ability to remember the facts, concerning which he has testified; his disposition to speak the truth or otherwise, and all other circumstances surrounding such witness in connection with the case; and should you believe from the evidence that any witness has willfully testified falsely to any material matter in this case, you may disregard the whole of the evidence of such witness, or you may give such evidence such weight as you believe it entitled to. A woman's repute for chastity and virtue is what people generally, of her acquaintance, say of her in this regard. It is the name she generally bears in this regard among her neighbors and acquaintances; and to justify you in finding the defendant guilty in this case, you must be satisfied from the evidence beyond a reasonable doubt that at the time of the alleged intercourse with the defendant, said Hattie M. Kinsley was of good repute for chastity and virtue. If a woman's neighbors and acquaintances say nothing of, or do not question her character for chastity and virtue, then her repute in this regard should be considered good. You are further instructed that

5—34 KAS.

you may consider the testimony of said Hattie M. Kinsley in determining whether or not there was, at the time of the alleged intercourse, a subsisting promise on the part of the defendant to marry her; but the testimony of said Hattie M. Kinsley alone is not sufficient evidence to establish such fact; and unless you have other evidence of such fact, you must find the defendant not guilty. Should you, however, believe that the testimony of another witness or other witnesses corroborates the evidence of Hattie M. Kinsley on this point, or should the circumstances of the case which are established independently of the testimony of Hattie M. Kinsley, corroborate the testimony of Hattie M. Kinsley as to such promise of marriage; and should you believe beyond a reasonable doubt that the defendant did promise to marry Hattie M. Kinsley, as charged, then you will find such promise of marriage as a fact in the case."

At the request of the county attorney, the court also gave the following special instructions:

"The court instructs the jury that in determining the guilt or innocence of the defendant, they may take into consideration all the circumstances of the case, together with the difference in age and intelligence of the parties, if any.

"The court instructs the jury that if they find from the evidence the defendant guilty of obtaining illicit connection, under promise of marriage, with Hattie M. Kinsley, a female of good repute, and under the age of twenty-one years, at any time within two years prior to the date alleged in the information, that evidence tending to show the bad reputation of the said Hattie M. Kinsley after the alleged commission of the crime, cannot be taken into consideration in determining the innocence of the defendant."

At the request of the defendant, the court gave the following special instructions:

"The court instructs the jury that any promise of the defendant to marry said Hattie M. Kinsley, made after the act of intercourse, will not sustain the charge against said defendant; but such promise, if any such was made, can only be considered by you as a circumstance in the case to prove the former contract, if any was made.

"The court instructs the jury that before you can find the defendant guilty, that you must first find that said Hattie M. Kinsley was a person of good repute and unmarried at the

time of making the marriage contract with the said defendant, and under twenty-one years of age."

The jury returned a verdict of guilty of the offense charged in the information against the defendant. A motion in arrest of judgment was made, but was overruled; and a motion for a new trial was made, which was also overruled. Thereupon the defendant was sentenced to be confined in the county jail of Smith county for a term of six months from and including December 26, 1884, and to pay a fine of $1,000, together with all the costs of the prosecution taxed in the case, and that he stand committed to the jail of said Smith county until the fine and costs were paid. The defendant excepted to the rulings, sentence and judgment of the court, and brings the case here.

*Corn & Myers*, for appellant.

*S. B. Bradford*, attorney general, for The State; *Edwin A. Austin*, of counsel.

The opinion of the court was delivered by

HORTON, C. J.: The appellant was convicted for a violation of § 36, chapter 31, Compiled Laws of 1879. This section reads as follows:

"If any male person shall obtain illicit connection, under promise of marriage, with any female of good repute, under twenty-one years of age, he shall be adjudged guilty of a misdemeanor, and shall be punished by fine not exceeding three thousand dollars, or by imprisonment not exceeding two years, or both such fine and imprisonment: *Provided*, That the testimony of the woman alone shall not be sufficient evidence of a promise of marriage."

The information charges the offense in the language of the statute. The appellant moved to quash the same, for the reason that the information did not sufficiently charge that the prosecutrix, Hattie M. Kinsley, was of good repute at the time of the marriage contract; that the information did not charge that the prosecutrix was, at the time of the marriage contract, a single woman, or that the appellant was a single man; and that the information did not allege that the marriage contract

was the moving cause or consideration for the illicit connection.

The information did charge that the prosecutrix was of good repute at the time of the marriage contract as well as at the time of the illicit connection, as the promise of marriage is recited as having been made at the time the illicit connection was obtained.   The information reads that—

"On or about November 3, 1884, in said county of Smith and state of Kansas, one H. B. Bryan, a male person, did then and there unlawfully and feloniously obtain illicit connection with one Hattie M. Kinsley, she, the said Hattie M. Kinsley, then and there being a female person of good repute, of the age of only seventeen years, and that the said H. B. Bryan did then and there obtain such illicit connection with said Hattie M. Kinsley aforesaid, at the time and place aforesaid, under a promise of marriage, then and there made by him, the said H. B. Bryan, to her, the said Hattie M. Kinsley."

The allegation that Bryan, being a male person, obtained illicit connection with the female, seduced under a promise of marriage, inferentially charged that the female was a single person.   It would conform to the better practice if the information contained an express averment that the prosecutrix was, at the time of the marriage contract and illicit connection, a single person; but as the language used necessarily implies that she was single at the times stated, and as the appellant could not have been misled or prejudiced by anything in the information, we think it was not fatal for omitting the direct averment that the prosecutrix was a single person.   The promise of marriage in such a case need not be technically valid, and it would be no defense that the defendant was married and could not make such a promise.   Therefore it was not necessary to allege that the appellant was a single man.   (2 Wharton's Crim. Law, 8th ed., § 1758.)   As the information charges that the illicit connection with Hattie M. Kinsley was obtained by the appellant under a promise of marriage, the information does show that the promise of marriage was the consideration for the con-

1. Promise of marriage; illicit connection; sufficient information.

nection, and that in submitting to the appellant's request, Hattie M. Kinsley relied on the promise.

On the cross-examination of the prosecutrix she was asked by defendant's counsel a number of questions, which were objected to, and the objections were sustained. Of this the appellant complains. The questions were as follows:

"Q. You may state if at Mr. Evey's, at a party on Friday night before your birthday last February, one year ago, 1883, Al. Williams asked you to accommodate him, and you said 'We have no chance.'

"Q. You may state if at Mr. Evey's party, on Friday night before your birthday on Thursday, last February, one year ago, 1883, Al. Williams asked you if Bryan, (meaning this defendant,) ever asked you for it, and you said 'No, he hain't got sense enough.'

"Q. You may state if at a party at Jim Wicks's one year ago last March, you were not in a bed-room, in the dark, alone with Jim Wicks, between ten and twelve o'clock at night.

"Q. You may state if at that same party at Evey's, whether or not Jim Wicks and John Evans did not ask you to accommodate them, and you merely laughed.

"Q. State if you were not sick in the fall of 1880.

"Q. Is it not the fact that you were pregnant in the fall of 1880?

"Q. Is it not a fact that between the 12th and 27th days of September, 1880, you came to Dr. Ayer, in Smith Center, for medicine, claiming to the doctor that you had a cold, when in fact you were pregnant?

"Q. Is it not the fact that on the 27th day of September, 1880, you came to Dr. Ayer, in Smith Center, and at that time you and your mother went with Dr. Ayer to Dr. Ayer's house, and the doctor made a private examination of you, and told you you were pregnant, three or four months gone?

"Q. How long did you keep company with him (Irwin Stevenson)?

"Q. Did you, before the defendant was going to see you, have intercourse with Irwin Stevenson?"

These questions did not relate to the subject of the examination-in-chief, and their purpose, therefore, evidently was to establish familiar and improper conduct on the part of the witness with other persons than the appellant; or to obtain a

denial of such conduct of the witness with other persons. The statute determines the rule as to the character of the evidence required to convict, and that rule is, "good repute of the prosecutrix." The evidence, therefore, in this regard, must be confined to the general reputation or character of the prosecutrix for chastity; and the character of the prosecutrix for chastity, in this class of cases, cannot be impeached by evidence of particular acts of unchastity. Proof of specific acts of criminal intercourse by the prosecutrix with other persons will not do. In *Bowers v. State*, 29 Ohio St. 542, in a conviction upon a statute very similar to ours, the following language is used:

2. Incompetent evidence; reputation and age of female.

"The instruction asked by the defendant and refused by the court, and the rejection of testimony tending to show specific acts of lewdness on the part of the prosecutrix, raise the same question, namely, whether the protection of the statute extends to all females under the age of eighteen, whose reputation for chastity is good, or only to such as have deservedly acquired that reputation by a pure life. It seems to us that the plain words of the statute leave no room for doubt on this question. The statute provides: 'That any person over the age of eighteen years, who, under promise of marriage, shall have illicit carnal intercourse with any female of good repute for chastity, under the age of eighteen years, shall be deemed guilty of seduction.' Language could hardly be plainer. It is the reputation and the age of the female, and not her previous conduct, that bring her within the protection of the statute. The law wisely and justly accords to the erring female a *locus pœnitentiœ.* If she has repented of her past error, and by her upright walk acquired an unimpeachable reputation for chastity, the law protects her against the man who overcomes her good resolves by a promise of marriage. It is the purity and integrity of her mind, and not merely those of her person, that the law designs to guard against the attacks of the seducer; and it looks alone to her general repute as evidence of that purity and integrity. We think, therefore, that the court was right in excluding evidence of specific acts of intercourse by the prosecutrix with persons other than the defendant."

In many of the states, the statute, instead of reading, "of

good repute," provides that the female shall be "of previous chaste character." Under such a statute, the character of the prosecutrix may be impeached by proof of specific acts of lewdness. (*Kenyon v. People*, 26 N. Y. 203; *Carpenter v. The People*, 8 Barb. 603; *Polk v. The State*, 40 Ark. 482; *People v. Brewer*, 27 Mich. 134; *People v. Clark*, 33 id. 112.) These decisions are not applicable to our statute, and therefore no comment upon them is necessary from us.

Again, as proof of want of chastity does not tend to prove want of truthfulness, the attempted cross-examination was not competent to affect the credit of the prosecutrix. The testimony of Dr. Ayer, Alice Evans and Al. Williams of specific acts of unchastity on the part of the prosecutrix with other persons than the appellant, was inadmissible for the reasons already stated.

The exceptions taken to some of the testimony offered on the part of the state, tending to show that the prosecutrix was a female of good repute for chastity, are not tenable. While the witnesses objected to, testified that—

"They did not know the general reputation of the prosecutrix for chastity in the neighborhood in which she resided at the time of the trial—that is, the neighborhood about twelve miles north of Smith Center—but they testified further that they had been acquainted with her about five years; that she had resided in the neighborhoods where the witnesses lived; that she was generally acquainted in said neighborhoods; and that they knew her general reputation for chastity in such neighborhoods."

These witnesses resided only five miles from the home of the prosecutrix. All this tended to prove the general reputation of the prosecutrix for chastity, and therefore was sufficient to go to the jury for their consideration. In a case of this kind, of course, it must be shown on the part of the state that the prosecutrix was, at the time of the illicit connection, of good repute; but it is unnecessary to confine the repute to one particular locality, if the female seduced has resided in different neighborhoods. Again, it well might be that a person not residing in the im-

3. Chastity; reputation; competent witness.

mediate neighborhood of the witness sought to be impeached would have as ample and accurate knowledge as to the reputation of such witness, among his or her neighbors, as one who did. (*Wallis v. White,* 58 Wis. 27; *People v. Lyons,* 51 Mich. 215; *Kelley v. State,* 61 Ala. 19; *Holliday v. Cohen,* 34 Ark. 707; *Railway Co. v. Richardson,* 66 Ind. 43.)

We have examined the instructions refused and those given, and also the comments of counsel regarding the same. We perceive no material errors in these matters, and the observations made cover substantially all the points presented.

In the language of the instructions, a woman's reputation for chastity "is what the people of her acquaintance generally

<span style="float:left">4. Reputation for chastity; evidence of good repute.</span> say of her in this regard; that is, the general credit for chastity which she bears among her neighbors and acquaintances." If a woman's neighbors and acquaintances say nothing of her, or do not question her character for chastity, then her reputation in this regard should be considered good. "The best character is generally that which is the least talked about." Therefore, the negative evidence of a witness "that he never heard anything against the character of the woman for chastity," on whose behalf he had been called; that is, "that he never heard her conduct criticised, condemned, or even talked about," is admissible upon the trial, where the reputation of the woman for chastity is in question, and is strong evidence of the woman's good repute. (1 Wharton's Law of Evidence, § 49; 16 Cox, 34; *Gandolfo v. State,* 11 Ohio St. 114; *Regina v. Rowton,* L. & C. Crown Cases, 1861–65, pp. 520 to 544.)

Upon the record, the judgment of the district court must be affirmed.

All the Justices concurring.