[Argued November 9; decided December 26, 1893.]

## STATE *v.* ADAMS.
[S. C. 22 L. R. A. 840; 35 Pac. Rep. 36.]

SEDUCTION UNDER PROMISE OF MARRIAGE—CODE, § 1863.— Where a woman yields her virtue to a man relying upon his promise to marry her in case she becomes pregnant from the act, she is not seduced "under promise of marriage"; these words contemplate that the seduction must be accomplished by means of an absolute promise of marriage, or one that becomes absolute the moment the woman yields.

APPEAL from Multnomah: M. G. MÜNLY, Judge.

A. J. Adams was convicted of the seduction of Amelia Nobbs under a promise of marriage, contrary to the provisions of section 1863, Hill's Code, and appeals.

AFFIRMED.

*Mr. Martin L. Pipes* (*Messrs. John W. Whalley,* and *Reuben S. Strahan* on the brief), for Appellant.

*Messrs. Geo. E. Chamberlain,* Attorney-General, and *Wilson T. Hume,* District Attorney, for Respondent.

Opinion by MR. JUSTICE BEAN.

The evidence shows that the prosecutrix, who is about twenty-seven years of age, came to Portland in January, eighteen hundred and ninety-one, from Council Bluffs, in Iowa, where some two years before she had been acquainted with defendant and had kept company with him for a few months. In April or May after her arrival in Portland, she again met the defendant on several occasions at the home of a mutual friend, where she was accustomed to visit, and was frequently accompanied by him on her return after these visits to the place where she was working as a domestic. On one of these occasions, in either April or May, eighteen hundred and ninety-one, the defendant solicited her to go with him to Portland Heights, to which she first objected, but finally consented, and, after arriving at the end of the car line, they walked around the heights and what occurred, as told in her own language, is, that "He teased me and teased me, until he induced me to give up to him. He said if he hurt me in any way he would see me through and marry me. If he got me in a family way he would marry me. I told him my intention was not to marry at all. He promised if he hurt me, if he got me in any different way, he would see me through, or see that I was cared for and do what was right; promised just as much as to say, 'I will marry you.' Said he never would hurt me. He promised both before and after that if he hurt me in any way he would see me through, and see that I was taken care of, just as much as to say, 'I will marry you.'" The immoral relations thus established continued at frequent intervals until a few months before the trial, in July, eighteen hundred and ninety-three, and resulted in pregnancy, and the birth of a stillborn child on the fourth of May, eighteen hundred and ninety-three.

The only evidence given on the trial of a promise of marriage, or of the seduction, was that of the prosecutrix, as above detailed, and which defendant contends is insufficient to prove the crime charged, because, as he contends, seduction accomplished under a promise of marriage to be performed only on condition that pregnancy results from the intercourse, is not within the statute. The statute (Hill's Code, § 1863) provides that "If any person, under promise of marriage, shall seduce and have illicit intercourse with any unmarried female of previous chaste character, such person, upon conviction, shall be punished, etc. A subsequent marriage of the parties is a defense to the violation of this section." It will be observed that mere illicit intercourse is not an offense under this statute, nor is seduction alone made a crime, but the seduction under a subsisting promise of marriage of an unmarried woman of previous chaste character. The gist of the offense is that the seduction shall be accomplished under or by means of a promise of marriage which is unfulfiled. Without the promise there can be no crime under this statute, however reprehensible the conduct of the man may be. A promise of marriage, and her reliance upon it, must be the means of inducing the woman to surrender her virtue. She must be drawn aside from the path of virtue she is then pursuing, and induced to yield to the solicitations of her seducer, by means of and under the influence of a promise of marriage, upon the performance of which she in good faith had a right to rely. Nothing less will satisfy this statute. Its object is not to punish illicit intercourse, but to punish the seducer who by means of a promise of marriage destroys the chastity of an unmarried female of previous chaste character, and who thus draws her aside from the path of virtue and rectitude, and then fails and refuses to fulfil his promise. It is, however, not necessary that

the promise should be technically valid to sustain a civil action for breach of promise; and, although it may be conditioned upon immediate intercourse, thus rendering it void in a civil proceeding because founded upon an immoral consideration, it is still held sufficient to sustain a criminal prosecution if the woman in good faith relied upon it and was thereby deceived: *Kenyon* v. *People*, 26 N. Y. 203, 84 Am. Dec. 177; *Boyce* v. *People*, 55 N. Y. 644; *Callahan* v. *State*, 63 Ind. 198, 30 Am. Rep. 211; *People* v. *DeFore*, 64 Mich. 693, 8 Am. St. Rep. 863, 31 N. W. Rep. 585. In such case, the mutual promise of the woman is implied from her yielding to the solicitations of her seducer under his promise of marriage, and the promise becomes absolute. But when the seduction is accomplished by means of a promise of marriage, to be performed only upon the condition that the intercourse results in pregnancy, no promise of the woman can be implied from such yielding, and it seems to us the contract smacks too much of a corrupt and licentious bargain to fall within the statute. How can it be claimed that a pure minded woman is led astray and her ruin accomplished under a promise of marriage which, with her assent, amounts to nothing more than a mutual agreement to engage in illicit relations so long as pregnancy does not result, and which neither party expects nor intends shall be fulfiled except upon the happening of an event which may never occur? Take the case of a woman who yields under a promise of marriage by a married man, to be performed on the death of his wife, could it be seriously contended that such a case would be within the statute? And yet it is difficult to conceive any difference in principle between the case suggested and the one at bar.

The statute is not intended as an act to punish a man who prevails upon a woman to gratify his lust by a prom-

ise of marriage of such a character. Its plain object is to protect the innocent and confiding from being betrayed, and surrendering to their destroyers all that is estimable in woman, under the belief, based upon what she supposes to be an honorable proposal of marriage, to be performed in any event, that to yield is but to anticipate the time when the act will be lawful. Its design is to protect the chaste woman from the assaults of a wicked and designing man, who makes use of the most potent of all seductive arts to win the love and confidence of a woman by professions of love and marriage, and not to protect one who is willing to gratify her own lustful desires, stipulating only that if her shame is likely to become exposed it shall be shielded by marriage. It recognizes that a woman, confiding in what she supposes to be an honorable promise of a future marriage, and relying upon it, is peculiarly defenseless against the solicitations and persuasions of him to whom she is betrothed, and has consequently provided for the punishment of him who, by means of such a promise, is guilty of betraying that confidence to the utter ruin and disgrace of the female, and the scandal of society. It was passed in the interests of good morals, and not as a cover for licentiousness. The words "under promise of marriage, seduce," it seems to us, manifestly contemplate that the seduction must be accomplished by means of an absolute promise of marriage, or one which becomes absolute the moment the woman yields. Any other construction would defeat the purpose of the statute, and render it a cover for licentiousness. In this case the improper relations continued between the prosecutrix and defendant, apparently without objection on her part, for more than a year after she is alleged to have been seduced, and yet during all that time there was no subsisting promise of marriage. The defendant, under such circumstances, was guilty of no crime

for which he could be punished under the statute, for the condition upon which his promise was to be performed had not happened, and there was consequently no broken promise for which he could be punished. The object of the statute is not to punish one who seduces a woman and then marries her, but to punish one who uses the promise as a means of inducing the woman to submit to his lustful desires, and, after his purpose is accomplished, abandons his victim to her disgrace and shame. If the prosecutrix was seduced at all, it was at the time the first connection took place, but there was no promise of marriage then, for the contingency upon which it was to become absolute did not happen until long after, and consequently the promise did not precede the intercourse, which is essential to constitute the crime.

The only case cited, or which we have been able to find, on the question presented by this record, is *People* v. *Hustis*, 32 Hun, 58, in which two of the three judges of the second department of the supreme court of the state of New York, in a very brief opinion, held that seduction accomplished under a promise of marriage conditioned on pregnancy resulting thereafter is within a statute similar to ours. This decision seems to have been based upon the proposition that the question had already been decided by the court of appeals in *Kenyon* v. *People*, 26 N. Y. 203, and in *Boyce* v. *People*, 55 N. Y. 644, but neither of these cases goes to the extent of holding the doctrine for which they are cited, only holding that a promise of marriage on condition of immediate intercourse is sufficient, because the law implies a mutual promise by the woman from her yielding, and, the condition thereby being fulfiled, the promise becomes absolute. But when the promise is conditional, depending on pregnancy, the condition may never happen, and consequently the defendant may never be under any

XXV. OR.—12.

obligation to marry the prosecutrix. He is not under a promise to marry at the time of the seduction, and may in fact never be. And hence it seems to us the cases referred to do not sustain the doctrine announced in *People* v. *Hustis,* and we are unwilling to regard that case as controlling authority.

This conclusion renders unnecessary an examination of any of the other questions raised on this appeal, and the judgment of the court below is therefore reversed, and the cause remanded for such further proceedings as are not inconsistent with this opinion.

REVERSED.