STATE OF IOWA v. ZELMAR HUGHES, Appellant.

**Seduction:** WHAT CONSTITUTES. Prosecutrix was a country girl, seventeen years of age, and defendant was several years her senior. He was her suitor and he flattered and caressed her, and promised that if she would submit to him, no conception should result and if it did he would marry her. *Held*, she having submitted, a conviction was warranted.

EVIDENCE: *Curing error.* Where, in a prosecution for seduction, prosecutrix testified that she told her mother of her condition soon after the act, and the mother testified that she had discovered her daughter's condition at that time, error in admitting the mother's testimony because it was based on what prosecutrix told her was cured by withdrawing prosecutrix testimony from the jury.

CORROBORATION. Evidence that defendant, though engaged to another, waited on prosecutrix as a suitor and said that he "was

going to show her a hot time" and that he said, after the act, not having seen her for a week, that he was going to her house for sexual intercourse, corroborates prosecutrix. Such statements are rebuttal where intercourse is denied, and harmless, if not strictly rebuttal.

COMPETENCY: *Objection.* The testimony of the mother of the prosecutrix that she discovered that her daughter was pregnant about four weeks after the alleged seduction is admissible, where the objection raised was only to the competency of the evidence and not of the witness.

SEDUCTION. A sentence of two years and six months imprisonment for the crime of seduction is not excessive where the evidence tended to show that the defendant paid his attentions to the prosecutrix with the deliberate purpose of accomplishing her ruin.

*Appeal from Pottawattamie District Court.*—HON. W. N. MACY, Judge.

WEDNESDAY, OCTOBER 5, 1898.

THE defendant having been accused and convicted of the crime of seduction, appeals.—*Affirmed.*

*Benjamin & Preston* and *L. T. Genung* for appellant.

*Milton Remley,* Attorney General, and *Jesse A. Miller* for the State.

LADD, J.—That some man had sexual intercourse with the prosecutrix about March 30, 1896, is put beyond dispute by the birth of a fully-developed child, December 18th of the same year. As to whether the defendant is that man, the evidence is in conflict, she affirming and he denying. Her previous chastity is not questioned, nor is the fact that she was then unmarried. But the defendant insists the evidence utterly fails to show that intercourse, if had, was procured through artifice, flattery, or deception. That he paid his attentions to the prosecutrix, by taking her to church several times, to a literary society, a theater, and a dancing party, during February and March, 1896, is admitted; and she testified that he hugged and kissed her

repeatedly, told her she was pretty and sweet, and on the night in question addressed her as his "pretty sweetness." On the way home from the dancing party, according to her testimony, after some caressing, he took liberties with her person, and told her what he wanted, and that he was going to have it. She responded that he was not. He then said he would not harm her, and would be careful, and remarked: "You don't need to be afraid of me knocking you up. If I was ornery enough to do the like, and get a woman in a fix, I would marry her. I know my sweet little girl won't refuse me." He also promised her that he would not get her in a family way. He then helped her from the buggy to the robe laid on the ground by the roadside, and the act complained of occurred. All of this he denies. The evidence tends to show that the prosecutrix submitted to the embraces of the defendant, if at all, by reason of his promises that he would not get her in a family way, and that, if he did, he would marry her. While the statement, if made, was not direct, it was meant to be so understood by her, and she so accepted it. His assurances that no harm would be done evidently related to physical injury, and were not representations as to the character of the act. But it cannot be said that she relied upon these promises entirely freed from the flattery and arts he had been previously and was then practicing. Indeed, it was held in *Wilson v. State,* 73 Ala. 527, that the prosecutrix will not be permitted to testify that she yielded in consequence of a promise of marriage or of any act or declaration of the defendant, because that is a matter of inference to be drawn by the jury from the facts and circumstances proven or presumed. While such is not the rule in this state, it is yet true that the jury may and should consider all the influences exerted by the defendant in overcoming the objections of the prosecutrix. Here she says the promises caused her to yield, but she does not state that these were the only influences operating on her will. What she doubtless meant was that but for these promises she would

not have submitted. As said in *State v. Higdon,* 32 Iowa, 262: "The exact amount or what kind of seductive arts is necessary to establish the offense charged cannot be defined. Every case must depend upon its own peculiar circumstances, together with the condition in life, advantages, age, and intelligence of the parties. All these circumstances, it must be presumed, were observed and duly considered by the jury and court below. From her demeanor they could tell whether her story went beyond or fell short of the real facts." It was held in *State v. Knutson,* 91 Iowa, 549, that to induce intercourse by a promise to marry the prosecutrix if anything went wrong might constitute seduction, the court remarking: "It is said that the promise of defendant, which caused her to yield to him the last time, was conditional, and wholly insufficient to induce a chaste woman to submit to sexual intercourse. It appears that several promises were made, and their effect upon the prosecutrix was for the jury to determine." In *State v. Hemm,* 82 Iowa, 609, an instruction to the effect that procuring intercourse "by representing that there was nothing wrong in the act, and that no one would find it out," constituted seduction, is approved, and it is there. said: "By the act of intercourse in this case, the prosecutrix became a mother, and his representations were false. If she yielded because of his representations, it was a case of deception or fraud, for he was the means of her public exposure. His representations were no less than a promise that it would not be known, which he rendered false. See *State v. Prizer,.* 49 Iowa, 534. But it is said that a woman with chaste character would not yield because of such representations. That was a question for the jury. The law does not determine that she would not." The reasoning of these cases leads to the inevitable conclusion that to induce an unmarried woman of previous chastity to yield her virtue by a promise of marriage in event she becomes pregnant may be seduction. Whether a woman of chaste character would so yield, and whether, if she so does, it is voluntary, and to gratify her desires, rather

than because of such conditional promise, may well be considered in connection with all the facts and circumstances shown upon the trial. But it cannot be said as a matter of law that an unsophisticated country girl of seventeen years, when addressed by a young man of five or six years her senior, with possibly a greater knowledge of the world, as in this case, and under the circumstances disclosed, would necessarily be of previous unchastity in yielding on the strength of such a promise, or that she submitted as a result of passion, rather than the false promises of the defendant. The question is not determined in *State v. Reilly,* 104 Iowa, 13. Where a promise of marriage must be the inducing cause, as in New York and Oregon, intercourse procured by conditional agreement to marry in event of conception is adjudged not to be within the statute. *People v. Van Alstyne,* 144 N. Y. 361 (39 N. E. Rep. 343); *State v. Adams,* 25 Or. 172 (35 Pac. Rep. 36). As applied to our statute, the reasoning of these authorities is not controlling, but important in passing on the facts of each particular case.

II. Proof of acquaintance and of opportunity is not alone sufficient corroboration of the prosecuting witness. *State v. Painter,* 50 Iowa, 317; *State v. Smith,* 54 Iowa, 743; *State v. Araah,* 55 Iowa, 258. The evidence in this case, however, tends to show that the defendant was waiting on the prosecutrix as a suitor. If this were not true, how, then, shall the fact that he was with her, attending church or entertainments, taking long drives, seven or eight times in as many weeks, be explained? There are some circumstances indicating the deliberate purpose on his part of accomplishing her ruin. He was engaged at the time, and was married to another within two weeks after the alleged seduction. Besides, one witness testified that the defendant told him prior to the offense that he was going to go with the prosecutrix, and was going "to show her a hot time." To another witness, on the Sunday after that event, he stated that he was going to the home of prosecutrix for sexual inter

course. If the jurors believed he was waiting on Cyrene only ostensibly as a suitor, and relied on the testimony of the other witnesses referred to, then they might well find that evidence other than that of the injured party tended to connect the defendant with the commission of the offense.

III. It is said that the evidence of defendant's statement that he was going to the house of prosecutrix for sexual intercourse was not admissible. This occurred within a week after the alleged seduction. The defendant had not seen the prosecutrix in the meantime. The only fair inference to be drawn from the statement was that such a relation existed between them. He had denied on examination any illicit connection with the girl, and this tended directly to rebut such evidence. Moreover, it tended to corroborate, as before stated, the story of the prosecutrix. See *State v. Hill,* 91 Mo. 423 (4 S. W. Rep. 121). Even if the evidence was not strictly in rebuttal, this was without any prejudice to the defendant.

IV. The mother of the prosecuting witness, over the objection of the defendant, testified that she discovered her daughter's condition two weeks after the defendant's wedding, which occurred thirteen days after the alleged seduction. The court had allowed Cyrene to state that she informed her mother of her condition at that time, but afterwards withdrew such evidence from the jury. The defendant insists that this information could alone be derived from the statements made by the daughter. If so, then the court, in withdrawing the evidence of the daughter from the jury, cured the alleged error. But the existence of pregnancy was a fact proper to be proven on such a trial, and no objection was made to the competency of the witness. The evidence was competent; the witness may have been incompetent. But the objection of incompetency went to the evidence only, and not to the witness. *White v. Smith,* 54 Iowa, 233 ; *Ball v. Railway Co.,* 74 Iowa, 132.

V.    The claim that the evidence established the crime of rape rather than seduction, and the exception to the eleventh paragraph of the court's charge to the jury, are without merit, and require no consideration.    The defendant was sentenced to serve a term of two years and six months in the penitentiary.    As said, there are circumstances tending to show that he paid his attentions to the prosecutrix for the deliberate purpose of accomplishing her ruin.    In view of this state of the record, we cannot say the judgment is excessive.—AFFIRMED.