BENJAMIN F. RUSSELL v. STATE OF NEBRASKA.

FILED NOVEMBER 22, 1906.   No. 14,626.

1. Courts: ADJOURNMENT. The judge of the district court has power for sufficient reason to adjourn a regular term of court to a future time or without day, and this may be done by an order to that effect sent to the clerk of the court before the time fixed for holding the regular term.

2. ——: SPECIAL TERM. The judge of the district court may call a special term for the transaction of the general business of the court *if he deem it necessary*.

3. Jurors: SPECIAL VENIRE. When the regular panel of petit jurors is quashed for any reason, the district court may order jurors to be summoned under section 664 of the code.

4. Seduction: EVIDENCE. In a prosecution for seduction, evidence of specific acts of lewdness on the part of the prosecuting witness is incompetent. If the prosecuting witness was of good repute for chastity prior to the alleged seduction she is within the protection of the statute. The evidence upon this point should be confined to general reputation for chastity.

5. ——: ——. A teacher's certificate held by the prosecutrix at the time of the alleged seduction is not competent evidence of reputation for chastity.

6. ——: PROMISE OF MARRIAGE. The crime of seduction is not complete unless the illicit intercourse is had under promise of marriage. The promise must be an unconditional one. It must be of such character and made under such circumstances that the one to whom it is made might reasonably rely upon it. A promise conditioned upon pregnancy as the result of such illicit intercourse is not such promise.

7. ——: CORROBORATIVE EVIDENCE. The requirement of the statute that the evidence of the female must be corroborated relates both to the act of illicit intercourse and the promise of marriage, and the existence of one of these facts does not necessarily prove the

existence of the other, nor does it furnish the corroboration required by the statute.

8. ——: ——. The circumstances relied upon as corroborating the evidence of the prosecuting witness as to the promise of marriage must point so plainly to the truth of her testimony and be of such probative force as to equal the testimony of a disinterested witness.

9. **Criminal Law: Instructions.** If a defendant in a criminal case is a witness in his own behalf, it is error to instruct the jury that, "if the defendant by his own testimony has not denied in any way any material fact proved in the case within his personal knowledge, such testimony or material fact proved, if not denied by the defendant, is admitted by the defendant to be true." *Comstock v. State*, 14 Neb. 205, *distinguished*.

Error to the district court for Frontier county: Robert C. Orr, Judge. *Reversed.*

*W. S. Morlan* and *J. L. White*, for plaintiff in error.

*Norris Brown, Attorney General, W. T. Thompson, L. H. Cheney, C. H. Tanner* and *J. L. McPheeley, contra.*

Sedgwick, C. J.

In the district court for Frontier county this defendant was convicted of the crime of seduction, and by these proceedings has brought the judgment of conviction here for review. This crime is defined by section 207 of the criminal code. One of the principal contentions of the defendant is that the conviction is not supported by the evidence. In disposing of that question, the evidence in the case will be referred to so far as may be necessary to that discussion.

1. It appears from the record that, in fixing the term of court in that county for the year in which this trial was had, the judge of the district court ordered that the first term of the district court should be held, commencing on the 5th day of March. And afterwards the judge sent from McCook two orders to the clerk of the district court for Frontier county, one of them canceling the regular term for that year, and the other ordering a special term

to transact the general business of the court. The manifest purpose of these two orders was to change the date and hold the term one week earlier. There is, of course, no doubt of the authority of the judge to postpone the regular term of court if good reason appears for so doing. He may, for sufficient reason adjourn the regular term without day. The statute, section 4735, Ann. St., authorizes the calling of a special term of court in the following words: "A special term may be ordered and held by the district judge in any county in his district, for the transaction of any business, if he deem it necessary. In ordering a special term he shall direct whether a grand or petit jury, or both, shall be summoned." This would seem to be sufficient authority for the action of the court in calling a special term, and the defendant cannot complain of such action unless he can make it appear that in some particular the statute has been violated. In the order calling a special term, the judge directed that a petit jury should be summoned. This was done, and the defendant moved to quash the panel. This motion was sustained, and the court then ordered the sheriff "to summon 24 persons, good and lawful men, from the body of Frontier county, having the qualifications of jurors, to appear forthwith and serve as jurors for this present term of court." This practice is justified by the provisions of section 664 of the code, which has been many times so construed by this court. We do not want to be understood as recommending the practice of changing the time of holding the regular term of court after the same has been fixed as the law provides. The law does not appear to contemplate such changes for trivial and insufficient reason. If the method pointed out by the statute for securing jurors is disregarded, no doubt the defendant may object to being tried upon a criminal charge before the jury so obtained. In such case the law will presume prejudice. If, however, the provisions of the statute have been complied with, and no prejudice to the defendant appears, it will be presumed that the court had sufficient reason for changing the time of holding the term.

This objection of the defendant, then, was properly overruled.

2. Upon the trial of the case the plaintiff showed that the prosecuting witness had been engaged in teaching school, and then offered in evidence her teacher's certificate, after having shown that it was regularly executed by the county superintendent and delivered to the prosecuting witness. It is now objected that this evidence was incompetent, and we think that there is merit in this objection. In the brief for the state it is said that this certificate was not offered "for the purpose of proving the general reputation of the prosecutrix for chastity. * * * The certificate, though it recites * * * 'to be a person of good moral character,' was offered as proof only, and to corroborate other testimony, that the prosecutrix at the time was engaged in teaching school under the proper authority, it being a paper authorized to be issued under the laws of Nebraska." It is impossible to say from this record what the counsel for the state had in mind when this certificate was offered. No suggestion appears to have been made at the time that it was offered for any special purpose. The fact that the prosecuting witness was engaged in teaching school was already in evidence, and, if true, was not likely to be contradicted as it could, of course, be absolutely substantiated. This fact was not so material to the prosecution as to make it necessary to show what the qualifications of the prosecutrix as a teacher might be, nor that she was duly authorized to teach, and the evidence in question could have had no effect in the interest of the state unless intended to show that the prosecutrix was of good repute for chastity. For that purpose it was clearly incompetent. The evidence of the county superintendent upon that point in this criminal trial was of no more importance than the evidence of other witnesses, and ought in like manner to be subjected to cross-examination.

3. The defendant complains that he was not allowed upon the trial to prove specific acts of lewdness on the

part of the prosecutrix for the purpose of establishing her want of chastity. The statute under which this prosecution is brought provides: "Any person over the age of eighteen years, who, under promise of marriage, shall have illicit carnal intercourse with any female of good repute for chastity, shall be deemed guilty of seduction, and upon conviction, shall be imprisoned in the penitentiary not more than five years, or be imprisoned in the county jail not exceeding six months,' but in such case the evidence of the female must be corroborated to the extent required as to the principal witness in case of perjury." Cr. code, sec. 207. It would seem that the language of our statute is sufficiently explicit to determine this question. Indeed, the language is so plain upon this point that it leaves no room for construction. Any female who is of good repute for chastity is within the protection of the statute. No condition is made that she must have deserved that reputation by a correct and pure life, and we cannot extend the statute by construction beyond its plain meaning. Similar statutes in other states have been so construed. *Bowers v. State,* 29 Ohio St. 542; *State v. Bryan,* 34 Kan. 63. In some of the states the statutes defining this crime are essentially different from ours. By the Missouri statute it is made a crime for any person "under promise of marriage" to "seduce and debauch any unmarried female of good repute." Under statutes like this there has been some difference of opinion as to the proper construction of the word seduce. Some courts have held that this word in itself means to corrupt and to draw aside from the path of virtue, and that one cannot be drawn from the path of virtue unless she is honestly pursuing that path, and that the charge of seduction involves the allegation that the woman seduced was at and prior to the time of her ruin of pure character and leading a virtuous life, so that in making such allegations she must be prepared upon the trial to establish its truth. *State v. Reeves,* 97 Mo. 668. Other courts perhaps have taken a different view, and have held

that the words "of good repute for chastity" indicate that the general reputation of the prosecutrix can be shown, but not specific acts of immorality. A statute which provides that the female must be of "previous chaste character" is, of course, also essentially different from ours. Our statute does not make it necessary to prove that the defendant has seduced his victim in the common law meaning of that word. The statute itself defines what shall be seduction. If the defendant was over 18 years of age and under promise of marriage had unlawful intercourse with a female of good repute for chastity, he is guilty of seduction without regard to whether the female so seduced was entitled to that good reputation. This contention of the defendant was properly overruled.

4. The defendant requested an instruction to the jury to the effect that, if the illicit intercourse was procured under a promise on the part of the defendant to marry the prosecutrix in case such intercourse should result in pregnancy, this would not be such a promise of marriage as the law contemplates, and the defendant should be acquitted. The law is correctly stated in this request for an instruction. A satisfactory reason for such a rule of law is given by the supreme court of Michigan in *People v. Smith,* 132 Mich. 58:

"Is a promise to marry, conditioned upon the illicit intercourse resulting in pregnancy, calculated to induce a pure woman to yield her chastity? In our judgment, this question admits of but one answer. Such a promise has no tendency to overcome the natural sentiment of virtue and purity. The woman who yields upon such a promise is in no better position than as though no promise whatever had been made. No wrong is done her if she is put in the class with those who commit the act to gratify their desire. She was willing to lose her virtue if some provision was made to conceal its loss. If pregnancy does not result from the illicit intercourse, her conduct is, in every respect, as culpable as that of her companion. If pregnancy does result, his con-

duct becomes more culpable than hers when, and not until, he refuses to marry her. The commission of the offence cannot depend upon the happening of a subsequent event."

See also *People v. Van Alstyne*, 144 N. Y. 361; *State v. Reeves, supra; Putnam v. State*, 29 Tex. App. 454, 16 S. W. 97; *State v. Adams*, 25 Or. 172, 35 Pac. 36. In some of the states from which these decisions are cited the statute is different from ours, in requiring proof that the female seduced was in fact of good character prior to the seduction, and not merely of good repute for chastity, but we do not see how this can make any difference in the construction of the statute upon the point now being discussed.

The reason urged for the refusal of the requested instruction is that there was no evidence justifying it. We do not take this view of the evidence. There was no direct evidence of a marriage contract of any nature except as testified to by the prosecuting witness. Whether this testimony was corroborated by circumstantial evidence will be considered later. According to the testimony of the prosecuting witness, the subject of marriage between them had never been mentioned directly or indirectly prior to the evening upon which it is alleged the crime was committed. They were riding in a buggy on the way from the home of the defendant to the boarding place of the prosecuting witness. She testifies that, when they had gone about a mile, he attempted to put his arm around her, but she prevented his doing so; that, a little later, he proposed that they have sexual intercourse. She several times refused, and then he said: " 'We will get married, and no one will ever know it. Come on.' I told him 'No,' and, when we had only just crossed the Cedar, he turned and drove up into a little draw, and then he says: 'Well, come on. Nobody will ever know. Come on.' I told him 'No,' and he says: 'Well, come on. No one will ever know it. We will get married, and no one will ever be the wiser. No one will ever know it happened.' After

he had said it so many times, I submitted to him." According to her testimony, the only thing that was ever subsequently said between them in regard to marriage was more than two months later on the 8th of February. They were both alarmed about her condition. He had called at her house and brought her some medicine. She was going out, and as they were leaving the house she mentioned the matter. This is the way she states it in her testimony: "Before I got into the sled that evening, I said to him before he started, I said: 'What do you intend to do about that marrying deal?' He said: 'I have been teaching, and I haven't thought much about it.'" We think that under this evidence the jury might have found that, although there was no unconditioned contract of marriage between these parties, he promised her, and she so understood him, and was led by his promise to believe that they would hide their conduct and keep their shame from the knowledge of the world, and, if it was found to be necessary to that end, would enter the marriage relation. This was the defendant's theory of the view that should be given to the evidence of the prosecutrix if it was believed to be true, and he was entitled to have this theory submitted to the jury. This was not done by any instruction given by the court, and to refuse this request of the defendant was erroneous.

5. The statute requires that the evidence of the female be corroborated to the extent required as to the principal witness in the case of perjury. In *Gandy v. State*, 23 Neb. 436, this court said:

"In a prosecution for perjury the falsity of the testimony or oath of the accused, upon which the perjury is assigned, cannot be established by the testimony of one witness alone. It may be proved by the testimony of one reliable witness, and such corroborative facts and circumstances as will give a clear preponderance of the evidence in favor of the state if such preponderance excludes all reasonable doubt of the guilt of the accused. Such

corroborative facts or circumstances ought, at least, to equal the testimony of a single witness."

No doubt this provision of the statute relates both to the act of intercourse and the promise of marriage. The existence of one of these facts does not tend to prove the existence of the other so as to furnish the corroboration required by the statute. In this case the jury would have no doubt of the act of intercourse, but the promise of marriage was denied by the defendant. He was asked: "State what, if any, promises or offers, directly or indirectly, or otherwise, you ever made to Edna Richey to marry her," and answered: "I never referred to that, made no promises." He also stated that he never at any time or any place proposed to marry Edna Richey, nor did she ever propose such a thing to him. It is insisted that the evidence of the prosecuting witness upon this point is corroborated by circumstances proved, but we cannot find such corroboration in the record. Several times, when they were little children, they had opportunities to see each other. Afterwards, for several years, they had no knowledge of each other. Once the defendant attended a teacher's institute, and says the prosecuting witness may have been present, he thinks probably she was, but there is no evidence that there was any conversation between them or opportunity for such. There is evidence tending to show that on one or two occasions a few words passed between them such as might take place between casual acquaintances. There were no acts of even ordinary friendship between them. Within a very few minutes after the first advances of the defendant her ruin was accomplished, and the only suggestion of marriage on his part testified to by her was in the midst of the contention which resulted in her ruin. There had been nothing between them that suggested to any of their friends or acquaintances that they contemplated marriage, and she testifies that the first mention that she made of her engagement, even to her mother, was in the following May when she was compelled to admit

and explain her condition. In *State v. Richards*, 72 Ia. 17, it appears that the prosecuting witness was at the time of the alleged seduction living with the defendant's mother, and the defendant was living in the same family. She had been an inmate of this family on two occasions and several months at a time, and had the entire confidence of the defendant's mother. It was held that there was no corroboration of the evidence of the prosecuting witness as to a promise of marriage. In discussing the question the court said:

"This is the relationship and intimacy relied upon as tending to show that the defendant had gained control of the prosecutrix's affections, or at least had so far paved the way for a proposition of marriage as to relieve from strangeness a proposition made for the first time in the midst of a physical struggle for sexual intercourse. But, to our mind the relation seems to have been a mere family relationship, and such as exists in no small portion of all the households, and entirely consistent with absence of affection or show of affection. The case is noticeable for the want of attention on the part of the defendant. The prosecutrix lived in the family more than a year. During that time the defendant escorted her once to church and once to an entertainment at a public hall. We think that we should be going too far to say that the facts relied upon corroborated the prosecutrix."

If the corroboration is to be circumstantial evidence, the circumstances proved must point so plainly to the truth of her statement and be of such probative force as to equal the testimony of a disinterested witness. This is the rule stated in *Gandy v. State, supra*, and we do not feel it necessary to depart from it.

6. The defendant was a witness in his own behalf, and the court instructed the jury that "if the defendant by his own testimony has not denied in any way any material fact proved in the case within his personal knowledge, such testimony or material fact proved, if not denied by the defendant, is admitted by the defendant to be

true." It is insisted by the prosecutrix that this instruction is justified by the language of this court in *Comstock v. State,* 14 Neb. 205, but this is an error. In *Comstock v. State,* the defendant requested the court to instruct the jury that "The fact that the prosecution have not called a physician, or expert, to the fact of penetration of the person of the prosecuting witness, Coral Comstock, weakens the evidence of the prosecution in regard to the fact of penetration." The court held that it was not error to refuse this instruction. The principal reason given for this holding was that the evidence of penetration was so strong "that the prosecuting witness needed no support from physicians or experts." The thought of the court being that, if the evidence of that fact was already overwhelming, the state would not be held to have weakened that evidence by failing to make further proof upon the same point. After stating that the testimony on the point was "ample and left no reason for doubting that it took place," the court recite some of that testimony, which seems to have indeed been very strong, and they say:

"Besides, although the prisoner availed himself of the privilege of being a witness in his own behalf, and testified, he did not offer, in a single particular to controvert what his daughters had sworn to respecting the fact of carnal connection. Had he not gone upon the witness stand, the fact of his not testifying against them would not have operated to his disadvantage, but having done so, his failure to deny what they said respecting a matter which must have been within his own personal knowledge, will be taken as an admission that it was true."

This does not mean that the jury must take it as an admission that it was true and that the court must so instruct. The meaning is that upon an argument of this kind the court will take that fact into consideration, because it would be natural for the trial court to have taken it into consideration in refusing to instruct the jury that

the failure to put experts upon the witness stand would weaken the testimony of the state upon a question that was so thoroughly established that no further testimony could have been thought necessary or even reasonable. To instruct the jury that defendant in a criminal case by a failure to deny any material matter that had been testified to against him must be held to have admitted its truth, would indeed be a strange doctrine. If upon a vital matter in a case, a matter that is of such great importance that it must be continually before the mind of the defendant, there is such ample proof in the case that it would be wholly unreasonable to offer further proof, and the defendant while on the stand fails to testify upon that matter, the court in considering the condition of the record, and determining therefrom the necessity or propriety of giving further instructions, might take into consideration the fact that the defendant had failed to deny the truth of a matter so thoroughly established. But, when the defendant under a charge of crime that may result in his imprisonment for a term of years goes upon the witness stand for the purpose of denying one of the material and essential elements of the case against him, it is not to be expected, much less required, that he have in mind all the material matters that may have been testified to in the case, and categorically deny everything of importance that has been said against him. The instruction given by the court in this case was to that effect and was clearly erroneous.

7. Other errors are complained of, and, indeed, it would appear that the prosecuting witness was allowed to testify to the contents of writings which she had sent to the defendant, and which apparently were then in his custody, without requiring the state to show that any attempt had been made to procure the writings themselves. The court once remarked in the presence of the jury that he considered certain evidence given by one of the state's witnesses as the strongest kind of evidence. If this cause should be retried it is not to be presumed that

these and similar errors will be repeated, and it is there-fore not thought necessary to discuss them further.

For the reasons given, the judgment of the district court is reversed and the cause remanded.

REVERSED.