# HAMILTON *v.* UNITED STATES.

---

CRIMINAL LAW; SEDUCTION; PROMISE OF MARRIAGE; STATUTES.

1. One who has sexual intercourse with a casual female acquaintance who, as a condition of her consent, exacts a promise from the former that he will marry her if she becomes pregnant, is not guilty of the offense of seduction.

2. A statute making it a criminal offense to seduce and carnally know any previously chaste female between the ages of sixteen and twenty-one years out of wedlock, cannot be so construed as to make a man guilty of its violation, who had sexual intercourse with such a female under a promise by him, exacted by her as a condition of her consent, that if pregnancy should result, he would marry her.

No. 2586. Submitted December 5, 1913. Decided January 5, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia convicting him of seduction. *Reversed.*

The COURT in the opinion stated the facts as follows:

Appellant, Percy Hamilton, defendant below, was convicted in the supreme court of the District of Columbia of the crime of seduction under sec. 873 of the District Code, which provides: "If any person shall seduce and carnally know any female of previous chaste character, between the ages of sixteen and twenty-one years, out of wedlock, such seduction and carnal knowledge shall be deemed a misdemeanor." [31 Stat. at L. 1332, chap. 854.]

The portion of the agreed statement of facts appearing in the record essential to the disposition of this appeal is as follows: "At the time of the alleged commission of the offense laid in the indictment, the complaining witness (hereinafter called witness) was a little under the age of seventeen years, and the defendant a little over eighteen, and each was unmarried. Prior to the alleged commission of the offense the defendant and another young man had on several occasions called upon the witness and another young woman at the house of the witness, in the city of Washington, District of Columbia. Each of the several persons mentioned is of the colored race. On the date named in the indictment, namely, April 15, 1912, the said four persons were together in a room at the said house, having a social time, during which the witness had been playing upon a piano, the defendant standing close beside her; and the two other persons were seated in another part of the room. The defendant, leaning over witness, suggested that they go into the next room and have carnal intercourse; which the witness refused to do. Some days later, on a similar occasion and under similar circumstances, the defendant made a similar suggestion, to which witness replied that she was afraid something might happen. The defendant said that there was no use of being afraid; that nothing would happen. The witness then asked the defendant if he would marry her if anything did happen, and upon his saying that he would she then consented, and the two went into the next room and there had intercourse. After the first occasion the act of intercourse between the wit-

ness and the defendant was repeated a number of times up to and including June 30, 1912. The witness's monthly sickness was due July 18, 1912, at which time she missed it, and was, in fact, pregnant. The witness would not have consented to the act in the first instance except for the defendant's assurances as aforesaid. After learning her condition, she asked the defendant to marry her, which he refused to do." The remainder of the agreed statement relates to the sufficiency of the evidence to sustain the verdict, which it will not be necessary to consider.

*Mr. Henry E. Davis* for the appellant.

*Mr. Clarence R. Wilson,* United States District Attorney, and *Mr. S. McComas Hawken* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The case, we think, turns upon the court's refusal to grant an instruction requested by counsel for defendant, challenging the sufficiency of the evidence to support a verdict of guilty. The law of seduction is distinguished by two lines of decisions in this country. One is based upon statutes similar to ours, and the other upon statutes requiring a promise of marriage as a condition precedent to the commission of the offense. The distinction has been elaborately pointed out in the briefs of counsel, but, when applied to the facts of this case, we are unable to discover wherein the cases make any real distinction. In Michigan, under a statute similar to ours, the court, in the leading case of *People* v. *Smith,* 132 Mich. 58, 92 N. W. 776, defined the application of the statute as follows: "Is a promise to marry, conditioned upon illicit intercourse resulting in pregnancy, calculated to induce a pure woman to yield her chastity? In our judgment, this question admits of but one answer. Such a promise has no tendency to overcome the natural sentiment of virtue and purity. The woman who yields upon such a promise is in no better position than as though no promise whatever

had been made. No wrong is done her if she is put in the class with those who commit the act to gratify their desire. She was willing to lose her virtue if some provision was made to conceal its loss. If pregnancy does not result from the illicit intercourse, her conduct is, in every respect, as culpable as that of her companion. If pregnancy does result, his conduct becomes more culpable than hers only when, and not until, he refuses to marry her. The commission of the offense cannot depend upon the happening of a subsequent event."

On the other hand, in New York, where the statute requires a promise of marriage, in the case of *People* v. *Van Alstyne,* 144 N. Y. 361, 39 N. E. 343, Mr. Justice Peckham, speaking for the court, said: "It was never intended to protect a woman who was willing to speculate upon the results of her intercourse with a man, and who only exacted as the price of her consent a promise on his part to marry her in case the intercourse resulted in her pregnancy. * * * The statute was passed to protect a confiding and chaste woman in yielding to the solicitations of the man who had promised to marry her. It was not the purpose of the law to throw its protection around the woman who was willing to consent to the act, and who only asked for a promise of marriage in case her lapse from chastity should be discovered by reason of her pregnancy. In such case she consents at a time when there is no real promise."

An attempt has been made to distinguish the holding of the Iowa court, where a statute similar to ours exists, from the holding of the Michigan court in *People* v. *Smith, supra,* but the courts are in accord where the facts are similar. In the case of *State* v. *Price,* — Iowa —, 138 N. W. 520, the court affirmed the Michigan rule in the following language: "Where the matter is one merely of barter, as in *People* v. *Smith, supra,* there is reason for saying this does not amount to seduction. It is then but a blunt offer of wedlock *in futuro* in exchange for sexual favors *in præsenti. State* v. *Reeves,* 97 Mo. 668, 10 Am. St. Rep. 349, 10 S. W. 841, 8 Am. Crim. Rep. 698." The rule of the Michigan court was approved in Nebraska, where the statute provides that "any person over the age of eighteen

years, who, under promise of marriage, shall have illicit carnal intercourse with any female of good repute for chastity, shall be deemed guilty of seduction." *Russell* v. *State,* 77 Neb. 519, 110 N. W. 380, 15 Ann. Cas. 222.

With these distinctions in mind, the present case is not difficult of solution. The agreed statement, in substance, shows that when defendant, on the first occasion, made the suggestion, upon the refusal of complaining witness the matter was dropped, without further argument or solicitation by defendant. When the second suggestion was made, complaining witness did not refuse, but demurred on the ground "that she was afraid something might happen," to which defendant replied "that there was no use of being afraid; that nothing would happen." Then complaining witness solicited and secured a promise from defendant that "he would marry her if anything did happen." If seduction were present in this case, and it were possible for the complaining witness to commit the crime, under these facts it would be difficult to determine which of the parties to this meretricious transaction was the seducer. We are unable to distinguish between a bargain of this sort, and one where a virgin deliberately parts with her virtue for a money consideration. The parties were practically of equal age, both of the age of discretion, and it does not appear that they were lovers. Defendant was only a casual visitor to the house where the prosecuting witness resided. There is no evidence of his having practised any art or wile, deception or persuasion, to induce the prosecuting witness to yield to his desires. Hence, none of the elements enter into the transaction upon which the crime of seduction may be predicated. Where, as in this instance, a woman traffics away her chastity for no other consideration than a mere contingent promise of marriage procured by her solicitation as an indemnity against possible pregnancy, it is not seduction under any statute or rule of law with which we are familiar.

The learned counsel for defendant in a single sentence so skilfully marshals the law which distinguishes this case from the cases relied upon by the government that we feel constrained

to adopt the following short paragraph from his brief: ":Such a 'meretricious transaction' as this case presents, such a matter 'merely of barter,' which 'smacks too much of bargain and barter, and not enough of betrayal,' 'smacks too much of a corrupt and licentious bargain,' consisting only of a 'blunt offer of wedlock *in futuro* in exchange for sexual favors *in præsenti,'* and conditioned upon ensuing pregnancy, does not constitute seduction: the law knows not such a thing as seduction on *de bene esse,* to be canceled by a marriage *nunc pro tunc."*

It is urged by counsel for the government that the statute should be so construed as to make the carnal knowledge of any virtuous woman between the ages of sixteen and twenty-one years seduction. We are not aware of a case where a similar statute has been so construed, and we perceive no sound reason why such a construction should be applied here. The object of the statute is to protect the chaste virgin against betrayal from an honest belief in the betrayer's protestations of love and affection, or an existing promise of marriage, or a present unqualified promise of marriage as an inducement for the commission of the act. It is not intended as a shield for a lascivious barter and sale of chastity, either by a corrupt consideration or upon a promise of marriage contingent upon the possibility of pregnancy, which would, at most, be remote to the minds of the parties engaging in the immoral transaction.

The judgment is reversed, and the case remanded for a new trial.                                    *Reversed.*