[Crim. No. 448.   Department Two.—December 31, 1898.]

THE PEOPLE, Respondent, v. LESLIE KEHOE, Appellant.

CRIMINAL LAW—SEDUCTION UNDER PROMISE OF MARRIAGE—MINORITY OF PARTIES.—In a prosecution under section 268 of the Penal Code, for the crime of seducing an unmarried female under promise of future marriage, the fact that the defendant, at the time of the promise, was under the age of lawful consent to marriage, thus rendering his promise of marriage not legal and binding, does not withdraw the offense from the purview of that section.  The offense may be committed by an infant upon an infant, "if both have reached the age of puberty."

ID.—LEGALITY OF PROMISE NOT REQUISITE—DESIGN OF LAW—CONFIDENCE IN MORAL OBLIGATION OF PROMISE.—The design of the law is to protect female chastity; and excepting where the promise of marriage is known by the promisee to be base and meretricious, the promise need not be such a legal promise as would support an action for its breach.  Although the female seduced may have known that the seducer was unable at that time to contract a lawful marriage, she had a right to put confidence in his intention to fulfill the moral obligation of the promise when able to do so.

ID.—EVIDENCE—PREVIOUS CHASTE CHARACTER OF PROSECUTRIX—SUBSE-QUENT UNCHASTE CONDUCT.—The inquiry in determining the chaste character of the defendant is confined to her previous chaste character, and evidence of her subsequent sexual intercourse with other men is properly excluded.

ID.—MEANING OF CHASTITY — PRIOR FAMILIARITIES.—Chastity, in the case of an unmarried female, means simply that she is *virgo intacta;* and whatever prior familiarities. liberties, or even in-decencies, may have been permitted by her, so long as she did not surrender her person until seduced to do so by the defendant under promise of marriage, she cannot be said to have been unchaste, or not to have been "an unmarried female of previous chaste character," within the meaning of the statute.

ID.—INSTRUCTIONS—ASSUMPTION OF FACTS.—Instructions are not charge-able with an improper assumption of facts, where it appears that, so far as assuming facts, they presented merely an abstract consideration of the crime and its elements, and were not di-rected to the particular circumstances of the case at bar, and that the court, when dealing with the evidence in the case, was careful to leave all questions of fact for the determination of the jury.

APPEAL from a judgment of the Superior Court of Hum-boldt County and from an order denying a new trial. G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

S. M. Buck, for Appellant.

W. F. Fitzgerald, Attorney General, and W. H. Anderson, Assistant Attorney General, for Respondent.

HENSHAW, J.—The defendant was convicted of the crime of seduction under promise of marriage, and appeals from the judgment and from an order denying him a new trial. The sections of the Penal Code bearing upon the offense are the fol-lowing:

"Sec. 268. Every person who, under a promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment in the state prison for not more than five years, or by a fine of not more than five thousand dollars, or by both such fine and imprisonment."

"Sec. 269. Intermarriage of the parties subsequent to the

commission of the offense is a bar to a prosecution for a violation of the last section, provided such marriage take place prior to the finding of an indictment or the filing of an information charging such offense."

Defendant and the girl with whose seduction he was charged were both school children, and about the same age. At the time of the seduction, and of the first act of sexual intercourse, each was about sixteen years old. The girl testified that she submitted to his embraces under his promise to marry her "when he was old enough" and "when they were old enough." She says: "There was no time ever set when we were to be married, only after he became of age and became old enough to be married we would be. I didn't know whether we would be married in one year or two years or three years or five years. I knew when he would become of age." The girl's evidence, if believed by the jury, was sufficient to support the conviction. It proved the promise and her reliance upon it in submitting herself to the defendant's desires.

But it is very earnestly pressed upon the consideration of this court that the defendant, under the facts, does not come within the purview of this statute. It is argued that a boy of sixteen is incapable under our law of consenting to and consummating marriage; that only an unmarried male of eighteen years or upward can do so (Civ. Code, sec. 56); that, even when the male has reached the age of eighteen years, he is still under disability, and may not obtain the requisite marriage license without the consent of his parent or guardian, and that if such consent should be withheld—and in this case it was withheld—he could not legally marry until he attained the age of twenty-one years (Civ. Code, sec. 69); that, as a boy of sixteen is incapable of consenting to and consummating marriage, so his promise to marry is invalid, and could not be made the foundation of a civil action, much less of a criminal; that section 269 of the Penal Code makes provision for barring a criminal prosecution under the preceding section of the code by intermarriage of the parties; and that, if section 268 of the Penal Code be held to apply to a case such as this, it must result in the hardship, if not in the absurdity of the law, that an adult offender, who has arrived at years of discretion, whose judgment

is matured, and whose passions presumably are better under control, may avail himself of marriage with his victim and so escape criminal prosecution, while the same avenue of escape would be absolutely closed to a young lad of immature judgment and tender years, who at the worst had but indulged the innate propensity of youth. Still further, it is pointed out that a boy of fourteen or fifteen years of age may be thus convicted of the seduction of a mature woman of thirty or forty; and, finally, it is insisted that the statute has in contemplation only male offenders who have passed their nonage.

This argument is not without much force, yet, after having given to it the full weight to which we deem it entitled, we are, nevertheless, of opinion that it cannot prevail. The law is designed to protect female chastity, for, as said by Judge Cooley, "whenever it shall be true of any country that the women as a general fact are not chaste, the foundations of civil society will be broken up." (*People v. Brewer*, 27 Mich. 134.) If a previously chaste woman submits herself to the embraces of a man under promise of marriage from him, upon which she in fact relies, the conviction, generally speaking, may not be avoided by proof that the promise was not legal and binding. The exceptions to the rule are found in those cases in which the promise itself is base and meretricious, and known to be such by the consenting woman. Thus, if a married man seduces a woman under promise of marriage, she not knowing that he has a wife, his promise is illegal and invalid, but this fact does not excuse him. The woman, in ignorance of the fact, was justified in relying upon that promise; but if, at the time of giving her consent, she knew the fact to be that the man was married, and that, therefore, the promise was necessarily conditional upon the death or the putting away of his present wife, so base a contract would not excuse her in law for the surrender of her chastity. The contract itself would be void as against public policy, and the woman's reliance upon it could not be extenuated or excused. (*People v. Alger*, 1 Park. (N. Y.) Cr. 333.)

But within the limitations thus indicated the general rule is, and we think it should be, that the promise need not be such a legal promise as would support an action for its breach, provided it be such a promise as will justify the reliance upon it

of the woman betrayed. In this case the promise was not legally binding, and, as the girl knew the age of the defendant, and is chargeable with knowledge of the law, it may even be presumed against her that she knew that the boy was incapable at the time of making a legally binding contract of marriage; that any promise which he made could certainly be repudiated by him upon attaining his majority. But this is not determinative of the main question. The boy was not incapable of making a promise of marriage, which in good faith and in good morals it was his bounden duty to perform. In such a case as this, where the presumption of legal knowledge upon the part of the girl is, to say the least, a strained one, it is far more natural to assume that her reliance sprang from her confidence in the defendant, and from her belief that, aside from any question of the legally binding force of his words, he would keep faith with her. It is precisely such confidence and such belief which is to be protected by the law, and herein we quote with approval the language of the supreme court of Indiana in *Callahan v. State*, 63 Ind. 198, 30 Am. Rep. 211: "There is nothing in the statute that requires the promise of marriage to be free from all legal objections, viewed as the foundation of an action for its breach. Its purpose was to prevent the obtaining of the female's consent to sexual intercourse by means of a promise of marriage; to protect her from the arts of designing and unprincipled men, in whom she may repose trust and confidence, and to whose solicitations she may yield, believing that their promises of marriage are made in good faith and will be fulfilled. It is not to be supposed that she will pause to consider, even if she were capable of judging whether the promise is valid in law, and one on which she could maintain an action if broken. It is not to be assumed in such case that her consent to the intercourse is given in consequence of her reliance upon an action upon the promise for damages in case of its breach; but it may be given upon the confidence she places in the good faith of the promise, believing, not that it will be broken, but fulfilled." In *Kenyon v. People*, 26 N. Y. 203, 84 Am. Dec. 177, it is said that it is not necessary that the promise should be a valid and binding one between the parties. The offense consists in seducing and having illicit connection with an un-

married female under promise of marriage. It is enough that a promise is made which is a consideration for or inducement to the intercourse." In *Polk v. State*, 40 Ark. 482, 48 Am. Rep. 17, the indictment charged merely that the parties to the act were past the age of puberty, and did not charge that they were of full age and able to make valid and binding promises to marry. The court say: "The offense consists in having illicit connection with an unmarried female who yields to the solicitations of her seducer under the inducement of a promise of marriage. And it may be committed by an infant upon an infant, provided they have reached the age of puberty." In *Crozier v. People*, 1 Park. (N. Y.) Cr. 455, it is said: "Whether the promise is binding or not, if the prosecutrix believes it, the danger and wrong are the same. If the promise is the consideration for, or the inducement to the illicit intercourse, the offense is complete. . . . . Though infancy may be a good defense to an action for a breach of promise of marriage, I apprehend it would not avail against a prosecution under this act. The offense is certainly of no less magnitude morally, and there is no less necessity for its punishment, because the promise was intended to be and was, in fact, a false pretense."

There was sufficient evidence to justify the finding of the jury that the complaining witness was of previous chaste character. There was affirmative testimony of the girl herself to this effect. The rejected evidence offered by defendant that she had had sexual intercourse with other men after the date of the alleged seduction was properly excluded, and the admitted evidence that she had permitted certain liberties to be taken with herself by her young male companions was not sufficient to show that at the time of the seduction she was of "unchaste character," within the meaning of the law. Chastity, as here employed, means, in the case of an unmarried female, simply that she is *virgo intacta*, and, though one woman may permit familiarities, liberties, or even indecencies, at the thought of which another woman would blush, so long as that woman has not surrendered her virtue she is not put without the pale of the law. (*Crozier v. People, supra.*) It is conceivable that a woman may permit or suffer many things which would be regarded as improprieties, and yet hold firmly to her

virtue. As is happily said in *State v. Brinkhaus*, 34 Minn. 285: "Although a female may, from ignorance or other causes, have so low a standard of propriety as to commit or permit indelicate acts or familiarities, yet, if she have enough sense of virtue that she would not surrender her person unless seduced to do so under promise of marriage, she could not be said to be an unchaste woman, within the meaning of the statute."

The alleged errors of the court in giving and refusing to give instructions do not call for detailed consideration. Of the instructions given, some are criticized as assuming the existence of facts proved against defendant, but the criticism is not borne out by the court's language. Where so assuming facts, it is apparent that the instruction is an abstract consideration of the crime and of its elements, and is not directed to the particular circumstances of the case at bar. When the court came the more specifically to deal with the evidence in the case, it was careful to leave all questions of fact for the determination of the jury. For example, the opening sentence of a long instruction given by the court is as follows: "The law does not require that the promise of marriage should be made at the time the sexual intercourse is had, but it is sufficient if the promise was made at any time before the act was done." It is said of this that it assumes the existence of two facts, the first the promise of marriage, and the second that the act of sexual intercourse charged had been committed; but a reading of the whole instruction discloses, as has been said, that the court is here abstractly analyzing the necessary elements of the crime, and this very instruction concludes with the following unambiguous and unassailable proposition of law: "Therefore, I instruct you that, if you find that the defendant seduced and had sexual intercourse with Loleta Brewer, that she was of previous chaste character, and that he had previously promised Loleta Brewer to marry her, that she yielded and consented to the act because of such promise, and that she would not have consented if such promise had not been made, then the law will not hold the defendant guiltless." The instructions proposed by the defendant and refused by the court were either erroneous in point of law for the very reasons which we have hereinbefore considered, or were open to the objection of charging upon the

effect of evidence. Upon the whole, the instructions given upon behalf of defendant were certainly quite as favorable to him as the law permits. We do not think that undue latitude was allowed in the cross-examination of defendant.

The judgment and order appealed from are therefore affirmed.

Temple, J., and McFarland, J., concurred.

Hearing in Bank denied.