The People v. William Gould.

*Criminal law—Preliminary examination—Plea of guilty—Evidence
—Seduction—Marriage of respondent and complaining
witness—Subsequent prosecution.*

1. A respondent's *voluntary* plea of guilty on being brought before
   an *examining* magistrate, while unnecessary to be made, is such
   a confession of guilt as may properly be submitted to the jury on
   the trial in connection with *like* confessions made to others, and
   the circumstances surrounding the case.

2. Where seduction is accomplished under *promise of marriage,*
   which *promise* has been kept, no prosecution can be allowed or
   conviction had *after* such marriage; and the *good faith* or *want*
   of *good faith* upon the part of the man in entering into such
   marriage cannot affect the question of his guilt or innocence.

Error to Shiawassee.    (Newton, J.)    Argued April 25,
1888    Decided May 11, 1888.

Respondent was convicted of seduction, and sentenced to
pay a fine of $300, and in default of payment to be imprisoned
for three years in the State House of Correction and Reform-
atory at Ionia.    Judgment reversed.    The facts are stated in
the opinion.

*Turner & Turner,* for respondent, contended as stated
in the opinion.

*Moses Taggart,* Attorney General, and *S. F. Smith,* Prose-
cuting Attorney, for the people.

Long, J.    The respondent in this cause was convicted in
the circuit court for the county of Shiawassee, for seducing
and debauching one Kate Morrow, and brings the case here
on writ of error.

The action was brought under section 9283, How. Stat., which provides:

" If any man shall seduce and debauch any unmarried woman, he shall be punished by imprisonment in the State prison not more than five years," etc.

The information charges—

" That on October 10, 1886, at the township of Shiawassee, in the county of Shiawassee, [said William Gould] did seduce and debauch one Kate Morrow; she, the same Kate Morrow, being then and there an unmarried woman," etc.

The cause was tried before a jury.

It appeared on the trial of the case that on April 19, 1887, said Kate Morrow made complaint, under How. Stat. § 9283, before George A Parker, a justice of the peace of the township of Shiawassee, in said county, charging the respondent with seducing and debauching her. A warrant was issued on said complaint; the respondent was arrested, and brought before said justice; and the examination set down for April 27, 1887. On said day the case was called, the respondent being present, and a recess taken to 1 o'clock in the afternoon of the same day. During such recess the respondent sought and obtained an interview with Kate and her mother, and finally went to their home, where Kate and respondent were married, during such recess, by Mr. Carruthers, a justice of the peace of said township. On the afternoon of the same day, about 7 o'clock, the respondent took the east-bound train for Port Huron, and deserted and abandoned his wife, and did not live or cohabit with her after said marriage, nor did he return to said county of Shiawassee till brought there under arrest as a disorderly person, under How. Stat. § 1985.

No further proceedings were had under the complaint made by Kate Morrow on April 19, 1887; but subsequently, and in September, 1887, Sarah J. Morrow, the mother of Kate, made complaint against respondent, before said Justice Parker, and respondent was held to trial in the circuit court

for said county, and the information upon which the respondent was convicted in this cause was filed, under said last-mentioned complaint, on December 21, 1887.

It further appeared upon the trial, and before any testimony was offered, that counsel for the respondent made the following request:

"*Respondent's Counsel.* Before proceeding to trial, I ask leave to file, not as evidence, but simply as the expression of the wish, the affidavit of the wife of the respondent, the woman he is charged with seducing, to the effect that she is not instrumental in this prosecution, and that she does not desire it to proceed.

"*The Court.* You can file it."

Testimony was then given showing that Kate was an unmarried woman on October 10, 1886, the date on which the offense was alleged to have been committed; that on July 22, 1887, she gave birth to a child; that she never was married till she was married to respondent on April 27, 1887; and that the respondent had been arrested under a complaint made by Kate for seducing and debauching her before said marriage, and was still held under arrest for said offense at the time of the marriage.

The only testimony given on the trial to prove the *corpus delicti* was the confession of the respondent made to Sarah J. Morrow, the mother of Kate, and to others, just before and after his arraignment on the complaint made by Kate, in which respondent stated—

"That the child was his, and that he had promised to marry Kate, and do what was right."

It also appeared that, on his arraignment before the justice under said complaint, he pleaded not guilty, but subsequently made a request of the justice to be allowed to withdraw his plea of not guilty, and to plead guilty thereto.

At the close of the testimony, counsel for respondent requested the court to charge the jury as follows:

"1. The validity of the marriage between the respondent and said Kate Morrow cannot be attacked by the prosecution in this case.

"2. The proof introduced on the part of the prosecution in this case, as to the statements made by respondent as to his being guilty of the offense charged, are competent for what they are worth, but do not constitute a *prima facie* case for the people.

"3. If the jury find, from the evidence in this case that, at the time the respondent was arrested the first time upon the charge of seduction, he was at that time arraigned before the justice, and pleaded not guilty, and, upon his marrying the girl (Kate) he was charged with seducing, he was discharged by said justice, and said prosecution was at that time ended, the people in this case have no standing in court in this prosecution against defendant, as the first one, upon which the respondent was discharged, is a complete bar to this prosecution, if they further find that both were brought for the same offense.

"4. If the jury find, from the evidence in this case, a valid marriage between respondent and Kate Morrow anterior to this prosecution, the respondent should be discharged.

"5. From the evidence in this case, the verdict of the jury must be not guilty."

The court refused to give defendant's requests in charge to the jury except the first, and it is the refusal of the court to give the remainder of said requests upon which defendant's counsel base their several assignments of error.

The court could very properly refuse the respondent's second request. While it was not necessary for the justice to take respondent's plea, the case being one which the justice had no power to try and determine, yet, the respondent having voluntarily tendered his plea of guilty, it was such a confession of his guilt, which, taken with his confessions made to others, and the circumstances surrounding the cases might very properly be submitted to the jury for their consideration, and which, under the circumstances of this case, might be sufficient proof of the *corpus delicti*.

The court voluntarily charged the jury, among other matters, as follows:

"On this subject of marriage, I charge you that, if the marriage (and there is no dispute about that) took place, with the intention on respondent's part, at that time, to perform in good faith all the duties which the relation of marriage imposed, and which naturally grew out of such relation, then the complaint would not be warranted; but if the marriage was resorted to as a piece of legal trickery to stop the voice of the girl, Kate, and prevent her from being a witness, with the intention, fixed and determined on in his mind at that time, not to live with her, nor to assume any of the duties and obligations of the marriage relation, and with the intention to abandon this girl, then the offense would be one against public decency and order, and would not be condoned by such marriage, and would be subject to prosecution."

We do not agree with the learned circuit judge in what he states the law to be, or in the reasons which he gives for so holding. Under this charge the jury were told that the guilt or innocence of the respondent must be made to depend, not upon the facts which go to make up the offense charged,— the seducing and debauching, and, as in this case, the surrender by Kate Morrow of her person to the respondent, in reliance upon his promise of marriage,—but upon the good faith or want of good faith of the respondent in entering into the marriage relation with her after the offense with which he was charged was committed.

It would not be claimed that, had the respondent married this girl at any time previous to the complaint being made against him, public policy or public decency would have required his prosecution. But, on the other hand, it will be conceded that public morals and public decency would be much better subserved by the marriage of the parties in this class of cases, as well as in bastardy proceedings under the statute, and thus make legitimate the children begotten by such illicit intercourse, and save, in part at least, the shame and disgrace of the injured female. The statute, in other sections, provides some punishment for the offense of deserting and abandoning the female after such marriage.

The *gravamen* of the offense under the statute under which respondent was convicted, is not the mere fact of intercourse. Two elements enter into it, and both must concur and exist at the same time,—seduction and debauchery; and, if there is no such concurrence, the offense would not be complete. Debauchery and carnal intercourse, without seduction, is no offense under this statute. The offense which this statute is aimed at is the seduction and debauchery accomplished by the promises and blandishments the man brings to his aid in effecting the ruin and disgrace of the female; and where the seduction and debauchery is accomplished by promises of marriage, upon which the female relies, and thus surrenders her person, and gives to the man the brightest jewel in the crown of her womanhood, it is the broken promise which the law will regard as the *gravamen* of the offense. It must therefore be held that, where seduction and debauchery is accomplished under promise of marriage, and the promise has been kept and performed, no prosecution can be allowed or conviction had after such marriage; and the question of the good faith or want of good faith upon the part of the man in entering into such marriage cannot enter into the question of his guilt or innocence. The promise has been kept and performed, and it would be against public policy and public decency to permit prosecutions to be carried forward in the courts of justice thereafter.

This question came before the courts of Pennsylvania in *Com. v. Eichar,* 1 Am. Law Jour. 551. In that case, Knox, P. J., delivering the opinion of the court, says:

" Can he now be convicted and punished for her seduction before marriage? It is not the carnal connection, even when induced by the solicitation of the man, that is the object of this statutory penalty, but it is the *seduction under promise of marriage,* which is an offense of so grievous a nature as to require this exemplary punishment. What promise? One that is kept and performed? Clearly not, but a false promise, broken and violated after performing its fiendish purpose.

The evil which led to the enactment was not that females were seduced, and then made the wives of the seducers; but that, after the ends of the seducer were accomplished, his victim was abandoned to her disgrace. An objection to this construction is that it places within the power of the seducer a means of escaping the penalty. So be it. This is far better than, by a contrary construction, to remove the inducement to a faithful adherence to the promise which obtained the consent."

See, also, 2 Archb. Crim. Pl. & Pr. 1825, tit. "Seduction."

Prosecutions under similar statutes in New York are prohibited by statute after the marriage of the parties. 3 Rev. St. N. Y. (5th ed.) 942.

We think this better reasoning than that of the learned circuit judge before whom this case was tried.

The respondent's fifth request to charge should have been given. It follows that the verdict and judgment of the court below must be reversed, and set aside, and the respondent discharged.

CHAMPLIN and MORSE, JJ., concurred with LONG, J.

SHERWOOD, C. J. I concur in the result in this case, on the ground that the marriage is not repudiated by the wife, nor claimed to be fraudulent. Were it otherwise, I should agree with the circuit judge.

CAMPBELL, J., did not sit.