Filed Oct. 13, 1893.

---

No. 16,904.

THE STATE *v.* OTIS.

CRIMINAL LAW.—*Seduction.*—*Marriage of Seducer and the Seduced.*— *Bar to Action.*—Where, in a prosecution for seduction, the seducer pleads, in bar to the action, that after the matters and things set up in the indictment he married the prosecuting witness, and that she is still his wife, such plea, if established, will be an effectual bar to the action.

From the Huntington Circuit Court.

The State *v.* Otis.

*A. G. Smith,* Attorney-General, *S. E. Cook,* Prosecuting Attorney, and *W. A. Branyan,* for State.

*Z. T. Dungan* and *C. W. Watkins,* for appellee.

HOWARD, J.—Under section 1992, R. S. 1881, an affidavit and information were filed against the appellee, and he was arrested for the seduction of the prosecuting witness, Ella M. Otis.

To the affidavit and information the appellee answered by special plea in bar, saying, "he is not guilty, for the reason that after the matters and things as set up in the affidavit and information he married the prosecuting witness, and that she is still his wife."

A demurrer for want of sufficient facts, to this plea, was overruled.

The prosecuting attorney then filed a reply, admitting that the appellee, "after the seduction, went through the form of marriage with Ella M. Otis, the person named in the affidavit and information as being seduced," but saying that at the time of the marriage ceremony the appellee was in the custody of the sheriff awaiting the action of the circuit court, on a charge of bastardy, "having been adjudged by a justice of the peace to be the father of a bastard child born to said Ella Otis"; that he fraudulently went through the ceremony of marriage, "for the purpose of avoiding the continuance of imprisonment for bastardy, and for the purpose of avoiding a prosecution for criminal seduction"; that at the time of the marriage ceremony he did not intend to live as the husband of Ella M. Otis, and keep his marriage vows, "but to break his promise immediately and leave the said Ella Otis without remedy"; and that he "did, immediately after the marriage, break his marriage vows and promises"; averring, therefore, "that such marriage was a mere sham, a fraud, a deception, a trick, a device

to avoid prosecution and imprisonment, and that defendant ought not to go acquit but be held to answer said charge.''

To this reply a demurrer was sustained and the appeal followed.

The overruling of the demurrer to the plea in bar, and the sustaining of the demurrer to the reply, are assigned as errors.

In case of seduction under promise of marriage, we think there can be little doubt that the subsequent marriage of the parties is a bar to further prosecution for the crime committed.

The keeping of the promise of marriage is a partial reparation for the wrong done, the only reparation in any degree adequate to the injury.

The chief object to be attained by our criminal statutes is the betterment of the condition of society, and the reform rather than the punishment of the criminal. Section 18 of article 1, of the constitution of the State, provides that ''the penal code shall be founded on the principles of reformation and not of vindictive justice.''

If the wronged woman freely enters into the married relation with her seducer, thus restoring in some measure the honor of her own womanhood, and securing also the good name and well being of her child, it would seem that her act is a condonation of the offense, so far as she is concerned, and that the policy of the law would be better served by such marriage than by any punishment that might be meted out to the offender.

The question does not appear to have arisen heretofore in this State. Our decisions are nearly silent upon the subject.

*Dowling* v. *Crapo, by her next friend,* 65 Ind. 209, was an action for seduction, where the prosecuting witness afterwards married a person other than the seducer, and

it was contended that such marriage barred her action. The court said: "We can conceive of no good reason why an action for the seduction of an unmarried female should be barred by her subsequent marriage. Such subsequent marriage does not remove the stigma, or compensate the injury caused by the seduction, nor is there any principle of public policy which requires that a subsequent marriage should bar the action. Public policy encourages, rather than discourages, marriage. Of course, we intimate no opinion as to the effect of a subsequent marriage to the seducer."

In bastardy, the marriage of the parties seems to be considered as terminating all further legal proceedings.

In the case of *Noble* v. *State, ex rel.*, 39 Ind. 352, the relatrix in a bastardy suit appeared in court and acknowledged that satisfactory provision had been made for the support of her child, and the suit was dismissed. It appeared that the consideration for this dismissal was a promise of marriage on the part of the defendant. The court held this consideration sufficient, saying: "We can not say that it was not such a provision as is contemplated by the statute."

The question before us has, however, been expressly considered in a Michigan case, *People* v. *Gould*, 70 Mich. 240; and, also, in a Pennsylvania case, *Commonwealth* v. *Eichar*, 4 Clark Pa. L. J. 551.

Both hold subsequent marriage of the parties a bar to further prosecution for the offense. In the latter case, the court said: "It is the seduction under promise of marriage which is an offense of so grievous a nature as to require this exemplary punishment. What promise? One that is kept and performed? Clearly not; but a false promise, broken and violated after performing its fiendish purpose. The evil which led to the enactment was not that females were seduced and then made the

wives of the seducer, but that after the ends of the seducer were accomplished, his victim was abandoned to her disgrace. An objection to this construction is that it places within the power of the seducer a means of escaping the penalty. So be it. This is far better than by a contrary construction to remove the inducement to a faithful adherence to the promise which obtained the consent." See, also, 2 Wharton Crim. Law, section 1760; 5 Lawson Crim. Defenses, section 620; 2 Archbold's Crim. Pr. and Pl., Pomeroy's Notes, p. 1825.

Were this an action for damages, by a parent, for the seduction of a daughter under twenty-one years of age, there is no question that the fact that the daughter had condoned the wrong done herself, or that she had been compensated by the payment of money, or by marriage, could not be pleaded in bar. The damage and loss to the parent are quite independent of the wrong to the daughter. *Gimbel, Admr.*, v. *Smidth*, 7 Ind. 627; *Pruitt* v. *Cox*, 21 Ind. 15; *Bartlett* v. *Kochel*, 88 Ind. 425; *Eichar* v. *Kistler*, 14 Pa. St. 282; *Sellars* v. *Kinder*, 38 Tenn. (1 Head) 134.

In the case before us, however, the prosecuting witness, of her free will, so far as the record discloses, and to protect her honor and that of her child, entered into the marriage relation with her seducer. It is not the policy of the law to discourage such means of atonement for the wrong which she has suffered. This marriage, with all its sad attendant circumstances, was, to her, a refuge from the shame into which she had fallen. It is true that in this case the appellee may have agreed to the marriage in order to escape merited punishment; but we should not, for that reason, remove an inducement which may lead another wrongdoer to atone for his fault by making the injured party an honored wife and mother.

We think the rulings of the court were based upon a proper construction of the statute.

The judgment is affirmed.

DAILEY, J., took no part in the decision of this case.

