· *In re* OSCAR LEWIS, *Petitioner.*

No. 13,596.   (73 Pac. 77.)

SYLLABUS BY THE COURT.

ILLICIT INTERCOURSE— *Subsequent Marriage Not a Bar.* The subsequent marriage of the defendant to the injured female is not a bar to a prosecution under section 36 of the crimes act (Gen. Stat. 1901, § 2021), providing a penalty for obtaining illicit connection, under promise of marriage, with any female of good repute under twenty-one years of age.

Original proceeding in *habeas corpus.* Opinion filed July 10, 1903.   Petitioner remanded.   ·

*W. S. Hyatt,* for petitioner.

*C. C. Coleman,* attorney-general, *E. L. Burton,* county attorney, and *J. W. Iden,* for respondent.

The opinion of the court was delivered by

MASON, J. :  Oscar Lewis was arrested on a warrant issued April 2, 1903, charging him with having, on June 1, 1902, obtained illicit connection, under promise of marriage, with Nellie Meador, she being of good repute and under twenty-one years of age.  Upon a preliminary examination he was held to answer the charge.  It is shown that on November 27, 1902, he was married to said Nellie Meador, and he now asks his discharge upon *habeas corpus* on the ground that such marriage is a complete bar to the prosecution. The state claims, and the claim is supported by the evidence, that the defendant abandoned his wife on the morning after the marriage, but this does not affect the legal aspect of the matter.

In the following cases it has been held that a subsequent marriage is a bar to a prosecution for seduction :  *Commonwealth v. Eichar,* 4 Pa. L. J. Rep. 326 ;

*In re* Lewis.

*People v. Gould*, 70 Mich. 240, 38 N. W. 232, 14 Am. St. Rep. 493; *The State v. Otis*, 135 Ind. 267, 34 N. E. 954, 21 L. R. A. 733.  The law is so stated in Wharton on Criminal Law, 10th edition, volume 2, page 1760, and Lawson's Criminal Defenses, volume 5, page 780.  These statements of the text-writers, however, are based solely upon the cases just cited, and therefore add little to their authority.  The Michigan and Indiana cases, moreover, merely followed the reasoning in *Commonwealth v. Eichar*, supra, so that the soundness of the doctrine in principle can be determined from an examination of the opinion in that case. Its full text upon this point is as follows :

"The evidence fully establishes the fact that, six months previous to the finding of this indictment by the grand jury, the defendant was legally married by the Rev. Mr. Rugan, of the Lutheran church, to the female whom he is charged with having seduced. She is by the laws of God and man his wife, and as such is entitled to all the rights which are incident to that relation.  Can he now be convicted and punished for her seduction before marriage?  It is not the carnal connection, even when induced by the solicitation of the man, that is the object of this statutory penalty, but it is the seduction under promise of marriage which is an offense of so grievous a nature as to require this exemplary punishment.  What promise?  One that is kept and performed?  Clearly not, but a false promise, broken and violated after performing its fiendish purpose.  The evil which led to the enactment was not that females were seduced and then made the wives of the seducer, but that after the ends of the seducer were accomplished his victim was abandoned to her disgrace.  An objection to this construction is that it places within the power of the seducer a means of escaping the penalty.  So be it. This is far better than by a contrary construction to remove the inducement to a faithful adherence to the promise which obtained the consent."

Our attention has not been called to any actual ad-
judication against this doctrine, nor have we discov-
ered any.    However, in *State v. Bierce*, 27 Conn. 319,
324, in considering the question whether it could be
shown in defense that the promise of marriage was
made in good faith, and broken only by reason of the
subsequent misconduct of the complaining witness,
the court said :

"Even if he had performed his promise to marry
her, we do not perceive how it could plausibly be
urged that it would be any answer to the charge of
the previous seduction ; however, such partial repara-
tion might be viewed as a circumstance to mitigate
the punishment.    As to the claim founded on the mis-
conduct of the female, subsequent to the illicit connec-
tion between her and the defendant, it is a sufficient
answer that the offense was committed and complete
before such misconduct took place, and that, whatever
effect it might have upon a claim by her upon him
for the breach of his promise of marriage, or however
it might be considered by the court in affixing the
punishment for the offense charged upon the defend-
ant, it could not relate back to render legal or inno-
cent a violation of the statute for which he had already
become amenable."

In *State v. Wise*, 32 Ore. 280, 282, 50 Pac. 800, it
was said :

"But, as we take it, the gravamen of the offense is
the act of seducing and debauching an unmarried fe-
male, of previous chaste character, under or by means
of a promise of marriage ; and the crime is complete
as soon as the act is accomplished, although a subse-
quent marriage is by statute a bar to a prosecution."

In *People v. Hough*, 120 Cal. 538, 52 Pac. 846, 65
Am. St. Rep. 201, the court held :

"When a man induces an unmarried female of pre-
vious chaste character to submit her person to him by
reason of a promise of marriage upon his part, the

*In re* Lewis.

seduction has taken place—the crime has been com-mitted.   The succeeding section, which provides that the marriage is a bar to a prosecution, clearly recog-nizes that the crime has been committed when the promise has been made and the intercourse thereunder has taken place.   There may be incidental references in some cases indicating that a refusal upon the part of the man to carry out the promise is a necessary ele-ment of the offense.   (*People v. Samonset*, 97 Cal. 448, 32 Pac. 520 ; *State v. Adams*, 25 Ore. 172, 35 Pac. 36, 22 L. R. A. 840, 42 Am. St. Rep. 790.)   But such is not the fact.''

In Clark and Marshall's Law of Crimes, page 1122, the authors say :

''By express provision of the statutes in most states, the subsequent intermarriage of the parties is a bar to a prosecution for seduction.   But this is not the case in the absence of such a provision, for, as was shown in another place, the person injured by a crime cannot prevent a prosecution by afterwards condoning the offense.''

Notwithstanding the authorities cited in support of the contention of defendant, we are not disposed to yield assent to it.   Being based upon the Pennsylva-nia case, they depend for their force, as it does, upon the soundness of the reasoning by which it is sup-ported, and this reasoning is based less upon the lan-guage of the statute than upon considerations of public policy, and the decision borders upon judicial legislation.

While the following language of Mr. Justice Johns-ton in *The State v. Newcomer*, 59 Kan. 668, 54 Pac. 685, was used in a case of statutory rape, it is equally applicable here, and is a satisfactory refutation of every argument advanced in the opinion in the Eichar case :

''In behalf of the defendant it is argued that the

evil consequences of the unlawful act have been averted by the marriage; that when the parties to the act voluntarily, and in good faith, entered into the marriage relation, the offense was condoned, and that the welfare of the parties and their offspring requires and the interests of the public will be best subserved by the ending of the prosecution.

"The difficulty with this contention is that the law does not provide that the offense may be expiated by marriage or condoned by the injured female. Her consent to the sexual act constitutes no defense, and neither her forgiveness nor anything which either or both will do will take away the criminal quality of the act or relieve the defendant from the consequences of the same. The principle of condonation which obtains in divorce cases where civil rights are involved has no application in prosecutions brought at the instance of the state for the protection of the public and to punish a violation of the law. It is true, as stated, that society approves the act of the defendant, when he endeavors to make amends for the wrong done the injured female, by marrying her, and usually a good-faith marriage between the parties to the wrong, prevents or terminates a prosecution; but the statute which defines the offense and declares punishment therefor makes no such provision. If the defendant has acted in good faith in marrying the girl, and honestly desires to perform the marital obligation resting upon him, and is prevented from doing so by the influence and interference of persons other than his wife, it may constitute a strong appeal to the prosecution to discontinue the same, or to the governor for the exercise of executive clemency, but as the law stands it furnishes no defense to the charge brought against the defendant."

Moreover the doctrine of the Pennsylvania, Michigan and Indiana courts, if accepted as sound, would not necessarily control here, since it has arisen under statutes for the punishment of offenses that include the element of seduction, properly so-called, and the

decisions supporting it are based to some extent upon that fact.   The Kansas statute here involved (Gen. Stat. 1901, § 2021) does not use the word "seduce," and, while the offense it creates is commonly and conveniently called "seduction," this does not imply that the term is technically correct.   It makes criminal the act of obtaining illicit connection under promise of marriage with any female of good reputation under twenty-one years of age.   This does not constitute seduction as the word is used in the statutes of other states.   In *State v. Reeves*, 97 Mo. 668, 676, 10 S. W. 841, 10 Am. St. Rep. 349, the trial court gave this instruction :

"If the jury believe beyond a reasonable doubt that the defendant, at the county of Callaway, Missouri, and within three years of the finding of the indictment, promised Zerelda Hall to marry her if she would permit him to have sexual intercourse with her, and if she did so on the faith of that promise, and she was at the time under the age of 'twenty-one years, and unmarried and of good repute, they will find defendant guilty."

This we conceive would be a good instruction under the Kansas statute.   Yet of it under the Missouri statute, which reads, "If any person shall, under promise of marriage, seduce and debauch any unmarried female of good repute," etc., the supreme court of Missouri said :

"The vice of that instruction consists in not requiring the female in question to be '*seduced*,' to be drawn aside from the path of virtue, but simply that if without any such arts and wiles as are calculated to operate upon a virtuous female and to lead her astray, the defendant made to the prosecutrix a *plain business offer* that he would 'marry her if she would permit him to have sexual intercourse with her, and if she did so on the faith of that promise,' that then

he was guilty. No one can, with any degree of plausibility, contend that a virtuous female could be seduced without any of those arts, wiles and blandishments, so necessary to win the hearts of the weaker sex. To say that such a one was seduced by simply a blunt offer of wedlock *in futuro,* in exchange for sexual favors *in præsenti,* is an announcement that *smacks too much of bargain and barter, and not enough of betrayal. This is hire, or salary, not seduction.* Any construction of the statute which would sanction the fifth instruction aforesaid would strike from the statute the word '*seduce,*' and render any one guilty of a felony who should, under promise of marriage, *debauch* any unmarried female.''

The substance of the foregoing excerpt is quoted with approval in *Putnam v. The State,* 29 Tex. App. 454, 16 S. W. 97, 25 Am. St. Rep. 738. The case is cited in the definition of the word ''seduction'' in Bouvier's Law Dictionary. So, in *Wilson v. State,* 58 Ga. 328, 330, it was said :

''Where consent to criminal intercourse is part of the original betrothal, and is procured solely by the undertaking to marry, the transaction may be mere coarse and corrupt traffic ; but where consent is given, pending a virtuous engagement, in consequence of a repetition of a promise to marry already made and accepted, the woman yielding in reliance on the plighted faith of her lover, and he intending that she shall trust and be deceived, the case is one of seduction.'' (See, also, *Merrell v. The State,* 42 Tex. Crim. Rep. 19, 57 S. W. 289.)

We are not advised as to the origin of the Kansas statute. It was not a part of the original crimes act, nor was it adopted from the laws of any other state, so far as we have discovered. It is worthy of note that at the time of its adoption the statutes of many states, including New York, Wisconsin, Texas, Georgia, Iowa, and Oregon, provided in express terms that subsequent marriage should be a bar to

prosecutions for seduction. This fact makes it reasonable to suppose that the Kansas legislature did not intend that this rule should obtain here, or such a provision would have been embodied in the act.

We hold that a subsequent marriage to the injured female is not a bar to a prosecution under section 2021 of the General Statutes of 1901.

The petitioner is remanded.

All the Justices concurring.