# BRAY *v.* UNITED STATES.*

CRIMINAL LAW; SEDUCTION; MARRIAGE AS CONDONATION; EVIDENCE;. "PREVIOUS CHASTE CHARACTER;" CONFESSIONS.

1. In the absence of statute the marriage of a defendant charged with se-- duction to the prosecuting witness, even before conviction, is no bar- to the prosecution; and for a stronger reason it cannot preclude a. court from pronouncing sentence when entered into after conviction.

2. Testimony of the prosecuting witness as to kisses and caresses by the- defendant is competent evidence to establish seduction.

3. An admission by a defendant charged with seduction that he had prom-- ised marriage to the prosecutrix is competent evidence, going to cor-- roborate the testimony of the prosecutrix that promise of marriage- had been one of the inducements to her downfall.

4. In a prosecution for seduction, the burden of the accused should not be- increased by the introduction of evidence not important to the proof' of the offense charged, and quite likely to excite prejudice and pre-- vent an impartial trial. In such a case, it is the duty of the court to: safeguard the accused at every stage of the proceeding, and secure- him a trial legal in all respects. (Following *Kidwell* v. *United States,*. 38 App. D. C. 566.)

5. Testimony by the prosecutrix and her mother as to a visit by them to. the defendant in his office, where they found him. in a compromising, situation with another woman, and as to the conversation between. them and the defendant at that time wherein the prosecutrix referred to the fact that she was then pregnant and had suffered two abor-- tions at the procurement of the defendant, is not competent evidence. to prove seduction, and should be excluded as calculated to excite the- prejudice of the jury and prevent an impartial trial.

6. Testimony by the prosecutrix' mother concerning a conversation be- tween her and the defendant as to the whereabouts of her daughter, wherein she threatened him with arrest for kidnapping, having no,

---

*Seduction—Evidence.*—For cases upon the question of evidence of specific instances to prove character for chastity in prosecution for seduc-- tion, see note to McQuiggan v. Ladd, 14 L.R.A.(N.S.) 727; upon the ques- tion of offer of marriage as defense to prosecution for seduction, note to, Thorp v. State, 29 L.R.A.(N.S.) 421.

relevancy to a seduction which occurred more than a year before and containing no admission of a fact relevant thereto, is incompetent to establish the seduction, and its admission is error.

7. Evidence offered by the accused in a prosecution for seduction, to show misconduct of the prosecutrix with others, subsequent to her seduction, is properly excluded in the absence of a showing that such relations with others followed closely upon the commission of the offense by the accused, and of proof that, previous to the offense, the prosecutrix had not been chaste. It is no defense to a seducer, and it does not lie in his mouth to prove subsequent misconduct that, if it existed, was a not unnatural consequence of his own crime.

8. Virginity is the test of "previous chaste character" as those words are used in D. C. Code Sec. 873 [31 Stat. at L. 1332, chap. 854], relating to the offense of seduction.

9. This court will not discuss in detail every exception to the giving and refusing of instructions, where such, when carefully considered, reveal no error, and the charge given by the trial court presents the case fully and fairly to the jury, and contains every limitation and safeguard which the defendant had a right to demand.

10. A statement by a defendant convicted of seduction, when called for sentence, that he knew he had wronged the prosecutrix, and had married her, made not as a confession of guilt, but as an appeal to the court for mitigation of his punishment, the maximum penalty having been inflicted, does not warrant an affirmance of the judgment notwithstanding errors committed on the trial, since to do so would be taking an unfair advantage of the defendant.

No. 2462. Submitted Jan. 7, 1913. Decided Feb. 3, 1913.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia convicting him of seduction and overruling his motion for new trial.

*Reversed.*

The COURT in the opinion stated the facts as follows:

Martin H. Bray appeals from a conviction under the third count of an indictment which charges that in February, 1910, in the District of Columbia, the defendant unlawfully and feloniously did seduce and carnally know, out of wedlock, one Alberta W. Sadler, she being at the time a female of previous

chaste character, and between the ages of sixteen and twenty-one years.

The jury having found the defendant guilty as charged, and a motion for new trial having been overruled, he appeared for sentence on April 12, 1912. Having been asked why sentence should not be pronounced, he stated that on April 10, 1912, he and Alberta Sadler had been legally married at Annapolis, Maryland. "Defendant further stated that he knew he had wronged Miss Sadler, and, after his conviction, determined that he would do all in his power to right the wrong; that Miss Sadler had always been true and faithful to him, and he now desired to provide for and protect her and the child about to be born, and preserve their good name. The defendant, therefore, pleaded for the court to extend mercy by placing him on probation, assuring the court that such action on his part would be merited by his future conduct." Declining to consider the marriage a bar to the sentence, the court, therefore, sentenced the defendant to three years' imprisonment in the penitentiary.

*Mr. Claude W. Owen* and *Mr. George C. Shinn* for the appellant.

*Mr. Clarence R. Wilson,* United States Attorney, and *Mr. James M. Proctor* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first question to be considered arises on the contention that the marriage of the defendant to the prosecuting witness was a condonation of the offense, and had the legal effect to abate the action.

The statutes of many of the states provide that the marriage, or bona fide offer of marriage, by the accused to the injured female at any time before conviction, shall have the effect to end the prosecution; but none has come under observation that makes the marriage, after conviction, a bar to sentence. The

District Code has no provision on the subject. It defines the offense as follows (section 873 [31 Stat. at L. 1333, chap. 854] ): "If any person shall seduce and carnally know any female of previous chaste character, between the ages of sixteen and twenty-one years, out of wedlock, such seduction and carnal knowledge shall be deemed a misdemeanor."

In some states where a promise of marriage is a necessary element of the crime, and the statute does not make marriage a bar to prosecution, it has been held that sound public policy demands that the marriage shall be a bar to further prosecution. *People* v. *Gould,* 70 Mich. 240–245, 14 Am. St. Rep. 493, 38 N. W. 232; *State* v. *Otis,* 135 Ind. 267–270, 21 L.R.A. 733, 34 N. E. 954. The rationale of these decisions is that as the offense is completed by the failure to perform the promise of marriage, its subsequent performance, with the consent of the other party, removes this necessary element of the offense. The doctrine has been expressly denied in Kansas in a case where the cases are reviewed. *Re Lewis,* 67 Kan. 562, 63 L.R.A. 281, 100 Am. St. Rep. 479, 73 Pac. 77. In Connecticut it has been held that marriage pending prosecution might well be considered as a circumstance in mitigation of the punishment; but it constitutes no bar. *State* v. *Bierce,* 27 Conn. 319– 324. In view of our statutory law, we are of the opinion that marriage, even before conviction, is no bar to the prosecution; for a stronger reason it can be no bar when entered into after conviction.

The exercise of leniency in the matter of the sentence, within the limits of the law, or under any other statutory provisions for the mitigation of punishment for crime, is a matter entirely within the discretion of the trial court, and one that cannot be interfered with by an appellate tribunal. There was no reversible error in disregarding the marriage and the plea founded thereon.

2. The first and second assignments of error, based on exceptions taken to the testimony of the prosecuting witness relating to kisses and caresses of the defendant, and to a conversation between them when they met defendant's wife in a drug store,

are untenable. The first were pertinent circumstances to establish the seduction. It seems that defendant had a wife with whom divorce proceedings were pending. The conversation tended to show that the prosecutrix had not before known of his marriage; and his renewed promise of marriage when he should be freed by divorce tended to corroborate her statement that her ruin, which had then been accomplished, had been accompanied with a promise of marriage. See *Jinks* v. *State,* 114 Ga. 430–433, 40 S. E. 320; *Morrell* v. *State,* — Tex. Crim. Rep. —, 70 S. W. 979.

3. The prosecutrix and her mother were permitted to testify, over the objection of defendant, to a visit made to the office of defendant on the night of November 11, 1911, and to conversations with him. The conversation was long and disconnected and mingled with bitter reproaches by the mother. In the course of it prosecutrix referred to her pregnancy, and the fact that she had been so before and what had been done twice to prevent its consequences. During the conversation defendant first denied that there had been a promise of marriage, but when asked again he said, "probably so." Testifying to her first remark on entering defendant's office, she said that she then saw why he had not kept his engagement with her. Counsel for the government asked what she saw that made her know why defendant had not kept his engagement. This was specially objected to as immaterial and irrelevant, and calculated to excite prejudice against defendant. The objection was overruled and the witness answered: "Because there was another girl sitting there; apparently she was sitting on his lap." Defendant also objected to the statement of the pregnancy of the prosecutrix, and to other statements by her and her mother, and finally moved the court to withdraw a juror and continue the case for trial before another jury because of the prejudicial character of the evidence and of the manner in which the examination had been conducted. The court, after directing the jury not to consider anything but the evidence actually admitted, denied the motion. Among other evidence of the mother that was objected to is the following: "You ought to be where

your wife is at, instead of coming to a home where there is nothing but a little innocent girl without any protection. He said, 'I think you are entirely too personal.' I said: 'My personality concerns my fatherless and innocent children and my home, where there is no protection for those three small children except my girl there in the house with her.' " (It had been proved that the mother was a professional nurse and generally away from home day and night.)

The admission of the defendant that he had promised marriage to the prosecutrix was competent evidence. It was evidence corroborating the testimony of the prosecutrix that promise of marriage had been one of the inducements to her downfall. The evidence could easily have been limited to this admission, and it should have been done. The fact that the witness was then pregnant and had suffered two abortions at the procurement of the defendant was not competent evidence to prove the seduction. Still less had the compromising situation of the girl found in defendant's office any relevancy to the charge against him. Such evidence could have no other effect than to excite the indignation of the jury and probably prevent a thoroughly impartial trial. The character of the offense charged is one of great enormity, calculated to arouse the indignation of all good men, and particularly of the fathers of young girls, some of whom are likely to sit upon all juries. The charge is one not easily defended, and for that reason the statutes of many states will not permit a conviction upon the uncorroborated testimony of the injured person. There is no such statute in this jurisdiction, but the conditions referred to make it important that the burden of the accused should not be increased by the introduction of evidence not important to the proof of the offense charged, and quite likely to excite prejudice and prevent an impartial trial. In such a case, "it is the duty of the court to safeguard the defendant at every stage of the proceeding and secure to him a trial legal in all respects." *Kidwell* v. *United States,* 38 App. D. C. 566–571.

4. The mother of the prosecuting witness testified that in March, 1911, she came home from Old Point, and her daughter was not there. She was then asked what conversation she

had with defendant when she met him on the street car. Defendant objected to the conversation as immaterial and prejudicial, but was overruled. The testimony is recited in the bill of exceptions, as follows:

Q. Go ahead and tell us fully the conversation.

A. I said, "Where is my girl, where is Alberta?" He says, "Is she not home with you?" I said, "No; don't play innocent with me;" and I said, "Undue influence is taking her away from me. I don't know where she is at." He said, "Well, she is in town somewhere." I said, "If you know that she is in town somewhere, you know her whereabouts;" and I said, "Only for the notoriety of it and the possible disgrace that would be brought on my little children and myself and my girl, I would have you arrested for kidnapping her." I said, "I hesitate on account of the disgrace and having her name placed in the paper, and her picture with you connected with it," I said that to him; and he said, "Many a young girl of twelve years of age has gone away and left home." I said, "The mothers are entirely different from me. I have raised that girl without the care of a father. I am going to see where she is at and I am going to find her." I said, "She's got to be found."

Q. What did he say?

A. "He did not say much to me. He was rather reticent in saying anything, but he turned green, he simply turned green.

Q. How long had Alberta been away from home up to the time you met Mr. Bray on the street car; how long had Alberta been away from you?

A. She had been away for about three or four weeks at the time. I could not say positive.

Q. After this conversation with Mr. Bray in which you threatened to have him arrested for kidnapping, when did you see Alberta?

A. The next afternoon I saw Alberta.

Q. Where?

A. She came to my room.

The foregoing evidence had no relevancy to the seduction which occurred more than a year before, and contained no ad-

mission of a fact relevant thereto. It was not only incompetent, but could have no other effect than to prejudice the jury against the defendant. For the reasons given in discussing the next preceding exception, the permission of its introduction was error.

5. Other exceptions relate to the exclusion of evidence which the defendant offered as tending to show misconduct of the prosecutrix with others, subsequent to her seduction. All such evidence is incompetent, unless, perhaps, when improper relations with others follow closely upon the commission of the offense by the accused, and are preceded by proof of circumstances tending to show that the prosecutrix had not been previously chaste. Under such conditions they might be proper circumstances for the consideration of the jury in determining her previous chastity. It is unnecessary, however, to go further than to say that there were no such conditions in this case. The evidence was rightly excluded. *Bracken* v. *State,* 111 Ala. 68, 56 Am. St. Rep. 23, 20 So. 636; *People* v. *Kehoe,* 123 Cal. 224–230, 69 Am. St. Rep. 52, 55 Pac. 911; *Boyce* v. *People,* 55 N. Y. 644–646. It is no defense to the seducer, and it does not lie in his mouth to prove subsequent misconduct that, if it existed, was a not unnatural consequence of his own crime.

6. The first exception to the charge of the court to what is meant by "previous chaste character." The court gave an instruction to the effect that what is meant is actual physical chastity. The contention of the defendant is that it means moral chastity, a chastity of mind and thought. By the great weight of authority in the construction of similar statutes, virginity is made the test. This constitutes a direct and certain test, whereas the test of moral or mental chastity is metaphysical, speculative, and impracticable. *State* v. *Brinkhaus,* 34 Minn. 285–288, 25 N. W. 642; *Lyons* v. *State,* 52 Ind. 426, 1 Am. Crim. Rep. 26; *People* v. *Kehoe,* 123 Cal. 224–230, 69 Am. St. Rep. 52, 55 Pac. 911; *Mills* v. *Com.* 93 Va. 815–819, 22 S. E. 863; *State* v. *Crowell,* 116 N. C. 1052–1058, 21 S. E. 502; *Washington* v. *State,* 124 Ga. 423–426, 52 S. E. 910; *Hatton* v. *State,* 92 Miss. 651–654, 46 So. 708; *State* v. *Primm,*

98 Mo. 368, 11 S. W. 732; *People* v. *Nelson,* 153 N. Y. 90–95, 60 Am. St. Rep. 592, 46 N. E. 1040.

The only evidence introduced relating to the conduct of the prosecuting witness tended to show that she had gone with young men to theaters and dances, and walking out, etc. She was a young girl, whose widowed mother was constantly absent, performing services as a professional nurse. To permit proof of such facts, and even some familiarities with young people of her acquaintance, to be regarded as destroying chaste character, would have the effect to take away from those most needing it, protection from the arts of the seducer. It has been argued that to make virginity the test would make it impossible for one who, having lost it, has since reformed, to be the victim of seduction. It does not necessarily seem to follow; but as the question is not presented we need not decide it.

7. It is unnecessary to discuss in detail the several other exceptions to the giving and refusing of instructions. These have been carefully considered, and we perceive no error. The charge presents the case fully and fairly to the jury, and contains every limitation and safeguard which the defendant had the right to demand.

8. It is contended on behalf of the government that, nothwithstanding errors committed on the trial, the judgment should be affirmed, because of the confession by the defendant when called for sentence, that has heretofore been stated. We are of the opinion that this would be taking an unfair advantage of the defendant. It was not made as a confession of guilt, but as an appeal to the court for mitigation of his punishment. There was no warning that any statement he might make would be used to his disadvantage, and it was made in the hope of profiting by it; most likely with the advice and consent of his counsel. He took nothing by it, as the maximum penalty permitted by the law was inflicted. Had he taken anything by his proof of marriage and his statement of his conduct, and been put upon the probation that he prayed, a different question would be presented.

For the errors pointed out, the judgment will be reversed, and the cause remanded with direction to grant a new trial.

*Reversed.*