R. A. Blount, *Plaintiff in Error*, vs. The State of Florida, *Defendant in Error*.

138 So. 2.

Division A.

Opinion filed September 24, 1931.

*McGill & McGill*, for Plaintiff in Error;

*Cary D. Landis*, Attorney General, and *Roy Campbell*, Assistant, for the State.

Ellis, J.—The plaintiff in Error, R. A. Blount, is a negro preacher about thirty-seven years of age. In 1930, about the month of February, he began having carnal intercourse with the thirteen year old daughter of one of his parishioners. The illicit relation continued for some time until the girl became pregnant.

On the 12th day of August, 1930, the mother of the girl made an affidavit against Blount charging him with having "carnal intercourse with an unmarried female under the age of eighteen years, to-wit, Laura Maultsby, of the age of fifteen years." Upon this affidavit a warrant was issued and Blount was arrested.

On the 25th day of August, 1930, Blount and the girl Laura were married.

On the 26th day of August, 1930, information was filed by the County Solicitor of Duval County in the Criminal Court of Record charging Blount with the offense under the statute denouncing the crime of "unlawful carnal intercourse with any unmarried person of previous chaste

character who at the time of such intercourse is under the age of eighteen years." See Section 7552 Compiled General Laws of Florida, 1927.

The name of the person was alleged to be Laura Maultsby, the time alleged was April 1, 1930, and the age of the girl under eighteen years.

Blount was convicted upon that information and sentenced to three years imprisonment in the State Penitentiary at hard labor. The verdict and sentence were rendered at the October Term of the court, 1930.

A writ of error was taken and the judgment is sought to be reversed on the ground that as the accused and the girl were married the offense was condoned and the purpose of the law, the reason for its enactment was attained and subserved.

There was no valid accusation against the plaintiff in error until the information was filed, as the affidavit and warrant dated the 12th day of August, 1930, charged no offense in that they did not allege that the unmarried female was "of previous chaste character." The information was filed in the court a day after Blount and the girl became man and wife. The prosecution having been instituted after the man and the girl with whom he had the illegal relation, became husband and wife, does the act (Sec. 7552, supra) under which the information was drawn apply?

The statute is directed against seduction of unmarried persons of previous chaste character under eighteen years of age. Formerly such statutes in this State were aimed at the masculine gender of the genus. Holton v. State, 28 Fla. 303, 9 South. Rep. 716. The statute has undergone some verbal changes in that particular, Chap. 8596 Laws 1921, but its purpose is still the protection of persons of immature age from licentiousness. Under the present statute the guilty person commits a felony; formerly the offense was a misdemeanor. See Sec. 2598 Rev. Stats. 1892.

On the question of condonation of the offense the rule is

that in the absence of statutory provisions, neither forgiveness by the woman, compromise or settlement nor marriage of the parties is a defense. See State v. Whalen, 98 Iowa 662, 68 N. W. Rep. 554; Barker v. Commonwealth, 90 Va. 820, 20 S. E. Rep. 776; State v. Stolley, 121 Iowa 111, 96 N. W. Rep. 707; In re Lewis, 67 Kan. 562, 73 Pac. Rep. 77, 100 Am. St. Rep. 479, 63 L. R. A. 281.

The authorities relied upon by the plaintiff in error in support of his contention that the statute is not applicable to a case where the man and woman involved in the commission of the offense marry and become husband and wife, rest upon the proposition that the evil at which the statute was aimed "was not that females were seduced and then made the wives of the seducers, but that after the ends of the seducer were accomplished the victim was abandoned to her disgrace." Such was the reasoning in Commonwealth v. Eichar, 4 Clark (Pa.) 326, followed by People v. Gould, 70 Mich. 240, 38 N. W. Rep. 232, 14 Am. St. Rep. 493, and State v. Otis, 135 Ind. 267, 34 N. E. Rep. 954, 21 L. R. A. 733, cited by counsel for the plaintiff in error. As pointed out In Re Lewis (Kan.) supra, the law is also so stated in 2 Wharton's Crim. Law, 1760, 5 Lawson's Defenses to Crimes 780, and 2 Archibold's Crim. Pl. & Ev. 1825, but as Judge Mason in In re Lewis, *supra*, said, "the statements of the text writers are based solely upon the cases just cited and therefore add little to their authority."

The argument in the authorities cited rests upon the postulate that the consent of the injured party is a condonation or expiation of the offense when the consent is evidenced by a marriage with her seducer afterwards, which is in the nature of forgiveness. Consent before the criminal act is committed is admittedly no defense. How then could consent afterwards relieve the act of its criminality, unless it is considered that it serves the public interest better that the marriage relation should not be dis-

turbed by punishment of the offender than that he should be held amenable to punishment for his criminal act?

That is a question which might commend itself to the legislature, but obviously could not be a rule of construction in applying the statute, because there are too many elements of uncertainty depending upon the motives or caprice of the seducer. To avoid punishment the seducer might be able by persuasion to induce his victim to marry him and then could immediately abandon her. If that motive were possible then it would be a question not whether there had been a marriage only, but whether the seducer at any time afterwards had been unfaithful to his marriage obligation in the matter of furnishing proper and adequate support and maintenance to his wife and her offspring. A material element of the offense would then be that the seducer had not married his victim or, having married her had abandoned her. In the latter case what limitation of time should be placed upon the proper observance of his marital obligations?

Society may approve the effort of the seducer to make the *amende honorable* by marrying the injured girl, but it would as surely condemn his act if by abandoning his wife he thus showed that he used the marital relation only for the selfish purpose of avoiding punishment for his crime. He would thus commit a double offense and shock society in a double aspect.

The peculiar wording of the statute as it now exists after its many changes suggests the idea that the legislature in its exalted opinion of the male youth of the country conceived it to be possible that a male youth under eighteen years of age might be seduced by an older designing person of the opposite sex. In which case if the theory of the counsel for plaintiff in error were correct would the offense be made to depend upon the successful effort of the victim to induce his seducer to marry him that he might properly

maintain and support her, and would her guilt depend upon his activities in that regard?

The courts must construe the statutes as they find them and often in the interpretation or construction of such statutes the history of the legislation is examined that the true intent and meaning of the statute may be found. There surely exists some reason why the legislature substituted the words ''unmarried person of previous chaste character'' for the words ''unmarried female'' as used in former statutes.

Marriage of the parties and becoming conduct afterwards may induce the court to administer a milder punishment under the statute than it otherwise might do, but the court is not inclined to reverse the judgment because the trial judge failed to discover in the evidence any circumstances which might commend themselves to his leniency.

The judgment of the court below is affirmed.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., concurs in the opinion and judgment.

TERRELL, J., dissents.

DAVIS, J., disqualified.